THE MAYOR AND COUNCIL OF THE CITY OF ATHENS *et al.*
*v.* HEMERICK *et al.*, and *vice versa.*

1. A municipality desiring to incur a bonded debt, and giving published notice to the qualified voters of the purpose and amount of the bonds, and that they are "to bear interest at a rate not to exceed six per cent. per annum, and to run not exceeding thirty years from the date thereof, the interest to be paid annually on the first days of January and July of each year, and the principal of said bonds to be fully paid off within thirty years from the date of the issuance thereof," fails to comply with the statute embodied in section 508(i) of the code, the statute requiring that the notice "shall specify what amount of bonds are to be issued, for what purpose, what interest they are to bear, how much principal and interest to be paid annually, and when to be fully paid off." Without passing upon other alleged defects, the omission to specify in the published notice how much principal and interest would be paid annually, rendered the notice so defective as to afford cause for enjoining the municipal authorities, at the instance of some of the tax-payers applying in their own behalf and in behalf of all others who might choose to join in the application, from issuing or selling bonds based on an election, and the result thereof, held in pursuance of such defective notice, and from levying or collecting any taxes for paying the principal or interest of the same.

2. Under the facts of the present case, the application for injunction did not come too late; and some, at least, of the applicants in the petition as amended are not estopped from invoking protection by that means in their own behalf and in behalf of the class which they represent.

*Judgment affirmed.    Cross-bill of exceptions dismissed.*

August 1, 1892.

Municipal corporations. Elections. Notice. Estoppel. Before Judge HUTCHINS. Clarke county. At chambers, June 18, 1892.

Hemerick, Fears, Wilson and Skiff filed their petition (to which afterwards Weatherford and Brightwell were made parties, adopting its allegations) against the mayor, aldermen, clerk and treasurer, water commissioners and chief of police of Athens, for equitable relief, praying for the granting of an injunction to restrain defendants from issuing, selling, delivering or in any way disposing of certain water-works bonds, from building water-works or licensing any company to build so as to render the city liable on its contract with the present water-works company, etc. The injunction was granted, the judge being of the opinion that the lack of strict compliance with the requirements of the statute as to what the notice of election should specify, would render the issuance of the bonds and the tax ordinance for their payment illegal. Defendants excepted, alleging that the court erred in granting the injunction, in holding the notice of the election insufficient, and in not holding that, even if the notice was insufficient, plaintiffs were estopped from taking advantage of the defect. Plaintiffs by cross-bill of exceptions alleged that the court erred in not granting the injunction on all the grounds set forth in their petition. The petition alleged that the city was chartered by act of 1872, and amendatory acts, by which the legislative and governmental functions and powers of the city are vested in the mayor and aldermen. Among other powers conferred, it was provided that the mayor and city council should have power by ordinance, (1) to levy and collect an annual tax, not exceeding one per cent., upon the value of all property within the corporate limits; (2) to pass every other regulation or ordinance that should appear to them necessary and proper for the security, welfare and interest of the city, or preserving the peace, health, order and good government of the city. In addition to this an act was passed authorizing the city to levy a tax of one half of

one per cent., to meet the interest and principal of $100,-000 of bonds, known as Northeastern railroad bonds, but to be used for no other purpose. On August 9, 1882, the mayor and council made a contract with Robinson for erecting and maintaining a system of waterworks for the city. By this contract the city obligated itself to grant to Robinson, his successors and assigns, the exclusive right to erect and maintain a system of water-works as therein contemplated, and to pay him, his successors or assigns, annually during thirty years, $3,000 rental; further agreeing that the city would pass such ordinances as might be necessary and proper to enable him to construct, control and protect his works; and providing further that the contract should be binding for thirty years, but that the city should have the right to purchase the water-works when completed, or at the end of each ten years thereafter, at a price to be ascertained by arbitration. In pursuance of this contract the water-works were completed and accepted by the city, after full and adequate test and an analysis of the water. The first ten years have just expired, and the water-works are in the same condition as when completed, both as to supply and quality of water, and under the contract the city is compelled to pay the water-works company $3,000 per year, or purchase the same, and this regardless of whether or not the city should use the water. Relying on this contract a large number of citizens, among them some of petitioners, have made contracts with the water-works company for a private supply of water, and have gone to the expense of laying pipes, tapping the mains, etc. Notwithstanding this contract and the fact that said company had spent large sums of money on the contract, the mayor and council on February 4, 1892, passed an ordinance to issue bonds in the sum of $125,000, providing for the holding of an election to determine whether such bonds should be issued, etc.

The election took place on March 10, 1892, and subsequently the mayor and council declared that the authority had been granted to issue the bonds, and by ordinance determined not to purchase and improve the present water-works, but to erect a new and distinct system. The election was illegal and void for the following reasons: (1). The purpose of the bonds was not definitely stated in the notice of election, nor did the notice state how much principal and interest was to be paid annually, as required by law; (2) the election did not get the required two thirds of the qualified voters; (3) the notice of election was deceptive, in that it implied that the only purpose was to purchase and improve the present water-works, and when the election was held the people voted believing that the present water-works would be purchased and improved as could be done under the contract mentioned, and that the building of a new system would not be resorted to except upon failure to purchase the present system; (4) because the statement was made by the mayor and council that the bonds would not increase the rate of taxation. Notwithstanding the illegal election the mayor and council have declared the election in favor of issuing the bonds, are now proceeding to issue them, and if not restrained will place them in the hands of innocent purchasers without notice, in whose hands they will be perhaps good against the city. Petitioners are duly qualified voters and tax-payers of the city, own large property in the city, and if the bonds are allowed to be issued and sold, the tax rate on their property will be largely increased, and a great multitude of suits will result in consequence of the increased rate. Notwithstanding the city under its charter cannot levy more than one per centum of tax, yet for the purpose of paying the interest on these bonds it has passed an ordinance fixing the tax for 1892 at one and one tenth per cent., which is contrary to law and the charter authority. The

only tax over one per cent. which the city can levy is to meet the railroad bonds mentioned, which now amount to only $28,000, while the taxable property is almost $7,000,000, and the one tenth of one per cent. is not necessary to meet the railroad bonds. There is no necessity for new water-works; the city can purchase those already constructed at a reasonable price, the erection of a distinct system would involve it in expensive litigation, and would result in its having to pay the rental of the present water-works. The present company has fully complied with its contract and never forfeited the rental; the city has made no effort to purchase the present water-works, or have the same improved, etc.

Defendants answered: By amendment to the charter the city was authorized and required annually, in raising taxes, to provide an adequate sum for the support of public schools, by increasing the tax above one per cent., if the ordinary and extraordinary expenses of the city could not be met by one per cent. tax, provided the excess over one per cent. should not be more than the percentage required to raise the school tax. The contract with Robinson was made as alleged, but it is illegal, null and void for the following reasons: (1) It attempts to create a debt by the city, the question of incurring which was never submitted to the qualified voters as required by law; (2) it attempts to confer upon Robinson and his assigns the exclusive right to erect and maintain water-works, which right the city was without authority to confer, and it being contrary to public policy for a city to prohibit itself from providing water, if the public necessity should demand it. The water-works company, claiming to be successors of Robinson, did erect a system, and the city has paid it for all water used from January 28, 1884, to ——— day of ———, 1892, and no rent has since been paid, as defendants contend the company has not complied with its contract as to quality and quantity

of water and pressure required.    On February 4, 1892, the city did pass the ordinance mentioned, providing for the election, and notice was given as required by law. The notice was: " By the Mayor and Council of the City of Athens, for an election to determine the question as to the issue by said city of water-works bonds : Where-as, the Mayor and Council of the City of Athens desire to issue $125,000 in bonds of said city, for the purpose of erecting and constructing a system of water-works, or for the purchase and improvement of the present system of water-works; and the assent of the qualified voters of said city being necessary thereto : therefore be it ordained by the Mayor and Council of the City of Athens, that in accordance with the constitution and laws of said State an election shall be held on the 10th day of March, 1892, to determine the question whether said bonds for water-works shall be issued by said city ; and that notice to the people (qualified voters) of said city be published in the Athens Weekly Banner, the newspaper in which the sheriff's advertisements are published for said county, for the space of thirty days next preceding the day of election, as provided by law." Then followed provisions as to what interest the bonds should bear, how long they should run, when the interest should be paid, that the principal of the bonds·should be paid within thirty years from the date of issuance, what the ballots should bear, that if the issue was voted by the requisite two thirds, before the proposed debt was incurred an ordinance or ordinances should be passed providing for the sale and issuance, and making provision at the same time for the assessment and collection of annual taxes sufficient in amount to pay the interest and principal of the debt within thirty years from the date of incurring the indebtedness, and that the election should be held as municipal elections of the city were held and in accordance with sections 508(i) to 508(m)

of the code of Georgia. This notice was accompanied by a certificate that the foregoing preamble and ordinance were adopted by the mayor and council on February 4, 1892, signed by the clerk of council. Every requirement of law was performed previous to the election, and it was held in conformity to law. 808 votes were cast, 805 for bonds and 3 against, and the number of votes for bonds was more than two thirds of the whole number of votes cast, more than two thirds of the voters registered for the election, and more than two thirds of the votes cast at the last general election in the city as shown by the tally-sheets of said election. Upon the result of the election being reported to the mayor and council they, in the presence of and with the election managers, consolidated the returns and declared the result. 881 votes were registered for the last general election in the city, 310 votes were cast at said election, and 893 voters were registered for the election on waterworks bonds. The notice of the election was not deceptive or calculated to mislead, the very terms of the notice showing that the plan uppermost in the minds of the mayor and council was the erection of a new system, and that the purchase of the old system was a secondary consideration. No statement was ever made by the mayor and council, or any one by their authority, that the issuing of the bonds would not increase the rate of taxation. Defendants have proceeded to issue the bonds, and they have been sold and negotiated and are now being lithographed, and are to be delivered on July 1, 1892, all of which was done before the filing of the petition and before any notice of protest or dissatisfaction on the part of any tax-payer or citizen was communicated to defendants. The mayor and council have passed an ordinance fixing the tax rate at one and one tenth per cent., which they had a right to do. In order to pay the expenses of the city for 1892, except for public schools, it was necessary to levy a tax of ninety-three

one hundredths of one per cent., and in order to provide for the public schools, to levy a tax of seventeen one hundredths of one per cent., making the aggregate levy more than one per cent., but the excess over one per cent. being less than the aggregate levy for the public schools. The mayor and council have appointed water-works commissioners and entrusted them with the whole business connected with the water-works matters, subject to the approval and ratification of the mayor and council. This commission addressed a communication to the president of the water-works company, asking if that company would sell its plant and franchises, and if it would make the commission an offer at the lowest price it would take. No reply has been received to this communication. This was done before any work was done towards the erection of a new system, and the failure to negotiate for the purchase of the present system was no fault of defendants. Defendants are proceeding to erect a new system, as they are authorized to do by the general welfare clause in the charter. They have incurred expenses of over $2,800 in purchasing land, engaging an engineer, salaries, lithographing bonds, etc., all of which was done after the election and on the faith of the same, these expenses having to be paid out of the proceeds of the bonds as there is no other fund from which to pay them, and before the filing of the petition, and before notice of protest or dissatisfaction with the election was brought home to the mayor and council or any of its officers. After the election and before the petition was filed, defendant had advertised for bids for the erection of the system. All the action above set forth has been open and matter of public notoriety; each step taken has appeared in the official proceedings of the council, and immediately been published as such in the city newspapers; and it has been openly and notoriously understood in advance that the commission would purchase lands to erect a new system and would incur

all the expenses above set forth.   With a full knowledge of all this on the part of complainants and other tax-payers, complainants will not now be heard to object to the issuing of bonds and completion of said system as contemplated by defendants.   Of the four original com-plainants three voted for the issue of bonds in the elec-tion, and the other, Hemerick, voluntarily acted as one of the managers of the election and participated in ascertaining and declaring the result, and was paid for his services.   So far from protesting that the election was illegal, he sat by quietly, and by his conduct in acting as manager encouraged others to vote and participate in the election.

Upon the hearing the contract with the water-works company was put in evidence.   Also, a report showing the financial condition of the city on March 1, 1892. This showed a total of debts $96,950, and of assets $69,-655.    The total of taxable property by tax digest of 1891, was shown to be $6,335,822, and the increase over 1890 was $858,586.   Upon a basis of total taxable property "per digest" of $6,600,000 and a rate of tax of one and one tenth per cent., the total amount of tax would be $72,600, which would allow for interest upon water-works bonds eight per cent. of the tax, for public schools seventeen per cent. and for the other municipal expenses the remainder of the $72,600.   There was also evidence, conflicting in its character, as to whether the contract of the water-works company had been complied with, as to pressure, quality of water, etc.   Skiff, Wil-son and Fears swore that they did not authorize the use of their names as complainants, and they asked the court to have their names stricken; and that each of them voted at the election for the issuance of the bonds.

T. W. RUCKER, ERWIN & COBB and GLENN & SLATON, for the mayor and council *et al.*

THOMAS & STRICKLAND, *contra.*