WILKINS *et al. v.* CITY OF WAYNESBORO *et al.*

1. The maturity of the principal and interest of bonds issued by a municipal corporation may, under our constitutional provision relating thereto, be fixed at any time or times, within the period of thirty years from the date of issue; but without regard to the time so fixed, an annual tax sufficient to pay both principal and interest when due must be provided for before or at the time of issue. No plan or scheme for raising the necessary revenue can lawfully be substituted for the assessment and collection of such tax.

2. By statutory enactment to carry into effect constitutional provisions in relation to the issue of bonds by municipal corporations, the notice calling the election must specify certain named particulars in reference to the bonds. If it fails to specify all of such particulars, or varies from the plan contemplated by the constitution for paying the bonds, the notice does not have the effect of calling a valid election. · If it be given under an ordinance prescribing the same terms, both the ordinance and notice are void and of no effect.

3. The method of determining whether two thirds of the qualified voters have voted for the issuance of bonds is by reference to the list of registered voters if a system of registration has by legislative enactment been provided for the municipality desiring to make the issue; if not, then by reference to the tally-sheets of the last general election held for such municipality.

4. A special act of the General Assembly which directs that the proceeds arising from the sale of certain bonds, which it authorizes a municipal corporation to issue after the requisite number of qualified voters have assented thereto, shall be applied to the equipment of waterworks and electric-light plants, and " to other purposes," is not in harmony with the general law which requires that the purposes for which such proceeds are to be applied must be specified. And so much of said act as, after prescribing that an annual tax sufficient to pay the interest on the bonds, further provides for a sinking fund to pay the principal of the bonds, and does not contemplate the collection by annual tax of an amount sufficient to pay such principal when due, is in conflict with the provisions of the constitution, and is void. ·

5. Applying what is laid down above to the facts appearing in the record, the court erred in passing the order validating and confirming the bonds.

Argued July 7, — Decided August 9, 1902.

Validation of bonds. Before Judge Brinson. Burke superior court. April 26, 1902.

*J. R. Lamar* and *F. L. Scales*, for plaintiffs in error.

*P. P. Johnston, E. H. Callaway,* and *J. S. Reynolds,* solicitor-general, contra.

LITTLE, J. A petition was filed in the superior court of Burke county, in which it was prayed that certain bonds sought to be issued by the City of Waynesboro should be validated, and the legality of the issue established. Certain citizens residing in that

municipality intervened, were made parties to the proceeding, and filed objections to the grant of the order which was sought. The hearing resulted in a judgment confirming and validating the bonds. The intervenors excepted, and as plaintiffs in error here contend that for many reasons the grant of the order was erroneous. It appears that in 1901 the General Assembly passed a special act which by its terms authorized the municipal authorities of Waynesboro to issue bonds, and an ordinance was adopted by the mayor and council, calling an election to ascertain whether the qualified voters of the city would assent to the issue. This ordinance prescribed the number and amount of the bonds sought to be issued, the time of maturity, and the manner in which funds necessary for the payment of the principal and interest should be raised. A notice calling an election, which set out in substance the terms of the ordinance, was duly published. An election was held, which it is claimed resulted in favor of the issue. The published notice calling the election followed the ordinance, and set out the number of bonds to be sixty, each of the denomination of $500, specified the rate of interest as five per cent. per annum, payable semi-annually, and fixed the date of the maturity of the principal on January 1, 1932. In relation to the disposition of the proceeds arising from the sale of such bonds, it was therein declared that not less than $7,000 nor more than $10,000 shall be applied to the construction of an electric-light plant, and not less than $20,000 nor more than $23,000 to a waterworks plant, with the following proviso: " That should the maximum amount appropriated to either project be not issued, the overplus may, in the discretion of the mayor and council, be appropriated to the other object named and to other purposes incident thereto ; but if not so used, the said overplus shall become a part of the sinking fund provided for the redemption of said bonds." The notice also specified the sum of $1,500 as the annual interest to be paid on the bonds, for the years 1903 to 1931 inclusive, and recited : " the amount of principal to be paid (that is collected as a part of the sinking fund provided for the redemption of said bonds) annually, for the years 1903 to 1932 inclusive, to be $517.25 ;" and as a plan devised for the redemption of the bonds at maturity the notice also declared that " the sinking fund provided by ordinance for the redemption of the bonds should, with its accumulation, be amply sufficient for that

purpose, but in the event of unfavorable casualty or failure to make the fund pay interest equal to the estimate, to wit, 5 per cent. compounded annually, the mayor and council will on proper authority, from time to time as the exigencies of the case may require, supplement said fund by an additional ad valorem tax, or with such fund as may be in the treasury at the time, not otherwise appropriated, so as to insure a sufficient amount to pay the bonds in full at maturity."

The objections presented by the intervenors at the hearing, to a judgment of validation, and urged here as reasons for setting aside that judgment, are, substantially, that the ordinance and notice under which the election was held are invalid, because they are contrary to the constitution and laws of the State; that no provision is made for an annual payment of the principal of the bonds, nor for the annual tax required by law to be levied to meet the sum when due. It is claimed, on the contrary, that the ordinance, notice, and election were each regular, valid, authorized by the constitution and laws of the State, and by the terms of a special act approved November 15, 1901; and that no error was committed in rendering the judgment of validation. A determination of all the issues raised can be reached by a consideration, first, of the nature and scope of the constitutional provisions relating to the issue of bonds by a municipal corporation; second, of the requirements of the statute as to notice of the election, and the method by which it shall be determined whether a sufficient number of voters have sanctioned the issue; and third, of the legal effect to be given the special act which is relied on in part as authorizing the plan of payments set out in the ordinance and notice.

1. Before proceeding to a consideration of the constitutional provisions which relate to the issuance of bonds by a municipal corporation, it may not be amiss to remark that at the time of the adoption of the constitution, and for some years prior thereto, there were but few solvent municipal corporations in the State; that is to say, that payment of the principal and interest of the bonded debt of such corporations could not be met by the imposition of a reasonable tax on property situated and contained within the corporate limits; that municipal taxes had, as a rule, grown to be not only onerous, but burdensome; that this condition of affairs was the result of the improvident exercise, by municipal authorities, of the power

conferred to create debts. The mischief which was believed to exist was the indiscriminate use of that easily to be acquired power, so that a high rate of taxation was found to be insufficient to meet current expenses and pay outstanding obligations. The stringent provisions found in our constitution are the remedies which the people sought to apply to the existing evil, and indicate a settled public policy, applicable alike to all municipal corporations in this State. The framers of the constitution made, and intended to make, the creation of a new debt by a municipality a matter not altogether easy of accomplishment, by placing upon the citizens residing within the limits of such municipality the responsibility for the creation of a debt. The condition annexed to the right to issue, as to the levy of an annual tax to pay off the debt, was seemingly considered to be a guaranty of prompt payment at maturity, and protection against municipal extravagance would be found in the provision that only when two thirds of the qualified voters had expressed a desire that the municipality should create a debt, such might be done. The provisions limiting the power to create a debt and issue bonds are found in paragraphs 1 and 2 of section 7, article 7 of the constitution of 1877. In the former of these paragraphs it is declared that an election to ascertain whether two thirds of the citizens of the municipality would assent to the creation of a new debt should be held as might thereafter be prescribed by law. By the second it is expressly declared that any municipal corporation which might incur any bonded debt should, before or at the time of doing so, provide for the assessment and collection of an annual tax sufficient in amount to pay the principal and interest of said debt within thirty years from the date of incurring the same. The manner of raising funds to meet the obligation about to be assumed is not left in doubt, but in plain terms it is declared that it shall be by the assessment and collection of an annual tax. There is, however, no requirement that payments of either interest or any part of the principal shall be made annually. The question of the maturity of the debt is, within stated limits, left to the people concerned, who, it was to be presumed, would look to their interests in determining it. But without regard to the date of the maturity of the principal or to the time fixed for the payment of interest, the corporation is absolutely required in each year after issue, and until maturity, to raise, by an annual tax, an amount sufficient to pay the principal

and interest when by the contract these become due.    Under these provisions no municipal corporation can have any authority of law to issue bonds, although the assent of the voters has been obtained, unless it does, before or at the time of the issue, provide not only for the assessment but for the collection of such a tax.    These are conditions precedent to the issue, and no plan for otherwise raising funds for the purpose can be lawfully substituted.

2. Legislative enactments in respect to the election required by the constitutional provision to ascertain whether two thirds of the qualified voters of the corporation have assented to the issuance of bonds are codified.    Political Code, §§ 377 – 381.    In the first of these it is provided that the officers charged with levying taxes, contracting debts, etc., for the municipality, shall give notice for the space of thirty days next preceding the day of election, specifying what amount of bonds are to be issued, for what purpose, what interest they are to bear, how much principal and interest to be paid annually, and when to be fully paid off.    The object of this notice must be to fully inform the voters so that they may intelligently judge whether the contemplated public work will be of sufficient importance to justify the imposition of an additional annual tax on their property, to promptly meet the debt and its increase when the time of payment shall come.    If the notice fails in any one of these particulars, it is an illegal notice in the sense that it is entirely ineffective to cause a legal election.    If it indicates a different method of raising funds to pay the debt than that prescribed, the bonds can not lawfully be issued, even if at the election the requisite number of voters authorize the issue.    If such notice be the result of an ordinance regularly passed, the ordinance is of no force, and does not authorize the notice.

3. Another important subject-matter of the enactments of the legislature on the subject is in relation to the method by which, after an election, it may be ascertained whether two thirds of the qualified voters of a municipality have assented to the issuance of bonds.    By section 380 it is provided that in determining this question the tally-sheets of the last general election held in said municipality shall be taken as the correct enumeration of the qualified voters of said corporation.    While this general rule is prescribed by the statute, attention is called to the fact that it was enacted at a time when there was no law for the registration of vo-

ters in force in this State, and consequently, reference to the tally-sheets, besides an actual enumeration, was the only method by which the result could be ascertained; but, subsequently to the passage of the act from which these sections are codified, a general registration law was provided for the State, which is made applicable to all county elections, and special registration has been provided by appropriate legislation for many municipal corporations, which in terms is applicable to elections held therein. In consequence of the passage of these acts it has been ruled by this court that, in the case of an election to determine whether bonds shall be issued, reference must be had to the registration list, to ascertain whether two thirds of the qualified voters have assented to the issue; and since their passage reference to the tally-sheets of the last general election is not necessarily the legal method of determining the number of qualified voters. *Floyd County* v. *State*, 112 *Ga*. 794. There the rule which governs is thus stated: "If within the county or municipality a system of registration has been provided by which the number of qualified voters of the county or municipality can be determined, the question whether two thirds of the qualified voters of the county or municipality voted for bonds must be determined from an inspection of the registration list. If the municipality has been invested by the legislature with authority to put a system of registration in force, and an election is held without having provided such a system, no means of determining whether two thirds of the qualified voters did, in fact, cast their votes for bonds exists. If no registration law is applicable and no authority to establish one has been conferred on the municipality, and the election for bonds is held, then the question as to whether two thirds of the qualified voters voted in favor of the issuance of bonds is to be decided by reference to the tally-sheets of the last general election."

4. The General Assembly passed a special act, approved November 15, 1901, which purported to authorize the mayor and council of Waynesboro to issue bonds, not to exceed $30,000, to establish electric lights and waterworks in Waynesboro, etc. Inasmuch as the authorities of the city rely, to some extent at least, on the authority which it is claimed this act confers, to sustain their contention that the ordinance, the notice, the election, and the plan indicated for the payment of the principal and interest of the bonds

are all authorized by law, it becomes necessary, in determining whether such contention is sound, to consider and pass upon certain provisions of that act. It is enacted by its fourth section that the proceeds arising from the sale of bonds shall be appropriated and applied to the construction of a waterworks plant and an electric-light plant, " and to other purposes." Presumably it was under the language just quoted that the municipal authorities provided, in the ordinance and notice of the election, that if any part of the sums designated for the establishment of such plans should not be used, it should go into the sinking fund provided for the redemption of the bonds. It was ruled in the case of *Smith* v. *Dublin,* 113 *Ga.* 833, that a notice which provided that a given amount should be used for the purpose of building and erecting a schoolhouse, and another amount (being the proceeds of the bonds) should be used for enlarging and improving the light and water plant of the city, and the surplus, if any, to be used by the mayor and council in such a manner as they might see fit, did not meet the legal requirements of a notice which shall specify " what amount of bonds are to be issued, [and] for what purpose." An election called to ascertain whether an issuance of bonds shall be made is illegal unless the purpose for which the bonds are to be issued shall be stated in the notice; and an issue of bonds is not legal when the purpose expressed is to construct an electric-light plant and waterworks, and " for other purposes." Hence, it would seem that so much of the act as declares that the proceeds of the bonds may be devoted to other purposes than the construction of the electric-light plant and the waterworks system is contrary to the general law of the State, in that the purposes for which the bonds are to be issued must be specifically stated in the notice. This act can not, therefore, be taken as any foundation for that part of the notice which provides that in the contingency that a sum shall remain after equipping the light and water plant it shall go into a sinking fund.

Again, the provision found in the sixth section of the act, that the number of voters shall be ascertained from the tally-sheets of the last general election, can have no effect, provided a system of registration has by legislative enactment been provided for the City of Waynesboro. However, these grounds will be more elaborately considered hereafter. The second section of the act under consid-

eration provides that the city council of Waynesboro shall assess, levy, and collect a sufficient tax to pay the interest of the bonds issued as the same shall become due, and provide a sinking fund for the redemption of the bonds as the principal shall become due. The constitutional requirement to which we have heretofore referred is not met by providing for taxation for the purpose of creating a sinking fund for the redemption of the principal of the bonds; certainly not unless the amount required to be raised by taxation is sufficient to pay the principal of the bonds at the expiration of the time in which they are made to run. It is one thing to raise a sufficient amount by taxation to pay the bonds at maturity, and another to raise a fund by taxation to provide a sinking fund for the redemption of the bonds. We are not now called upon to pass on the question whether, when the payment of the principal of the bonds is deferred for a number of years, the amount provided annually by taxation for the payment of the principal may not be designated a "sinking fund." What we do rule is that the bonds can not lawfully be issued until provision has been made to pay off the principal of the bonds by annual taxation. The City of Waynesboro could, under the general law, through the municipal authorities, have given the notice and held the election to ascertain whether bonds should be issued, without any special act. It might also, under the terms of the special act in so far as they do not conflict with the constitution and laws of this State, have held such an election and determined the result; but a special act can not give any municipal corporation authority to issue bonds in any other manner or on any other terms than those provided by the constitution and general laws of the State; and so much of the act of 1901 as is in conflict with either the constitutional provisions or the general law to which we have directed attention, is of no force and effect.

5. We are now to determine whether, under the construction which we have given to the constitution and general laws on the subject of the issue of bonds by municipal corporations, and the special act which authorizes the City of Waynesboro to issue the bonds in question, the court erred in passing an order confirming and validating such bonds. It is true, as we have before said, that the notice of the election states the amount of the bonds to be issued, the rate of interest to be paid and when, and that the prin-

cipal is to mature and be paid in thirty years. These statements meet the requirements of the statute in such matters. The notice goes further, however, and states that of the proceeds of the bonds not less than $7,000 nor more than $10,000 shall be applied to the construction and equipment of an electric-light plant, and not less than $20,000 nor more than $23,000 shall be applied to the erection and equipment of a waterworks plant. We do not think that it was ever contemplated that a notice of such an indefinite character, as to what amount should be applied to a named purpose, would meet the requirements that the notice shall state the amount of bonds to be issued and for what purpose. The voter is entitled to know how much money will be used to separately construct these public improvements. He might be willing that $7,000 should be applied to the construction of an electric-light plant, but not that $10,000 should go in that direction; and the will of the voters must, after all, govern. But, passing these indefinite statements, we find in the notice a recital that, should the maximum amount appropriated to either project be not so used, the overplus may, in the discretion of the mayor and council, be appropriated to the other project named, and to other purposes incident thereto; but if not so used, the said overplus shall become a part of the sinking fund provided for the redemption of said bonds. Clearly this is no compliance with the law. The notice must state the purpose for which the bonds are to be issued. Why should there be an overplus? If there is to be an overplus, why issue the bonds represented thereby? The effect of applying it to the sinking fund, under the scheme inaugurated, is to issue bonds to raise money to pay into a sinking fund to redeem the bonds issued.

Further, and of more vital importance, is the provision in the notice relating to the payment of the principal of the bonds. After providing for the interest, the notice says: "The amount of the principal to be paid (that is, collected as a part of the sinking fund provided for the redemption of said bonds) annually, for the years 1903 to 1932 inclusive, to be $517.25," which when collected is to go into the sinking fund for the redemption of the bonds. If collected annually, the aggregate sum would be $15,000, the principal of the bonds being $30,000. The law requires an annual tax *sufficient in amount* to pay off the bonds within thirty years. The notice under consideration is not a compliance with the require-

ments of the law, nor will these be satisfied by raising any sum for a sinking fund. An amount sufficient to pay off the bonds at maturity must be raised by an annual tax. A sinking fund may, and frequently does, take unto itself the wings of the morning and fly away. The same may be said of the amount raised annually by taxation; but to this it may be replied that it is not so liable to be diverted as a sinking fund, for the reason that the contemplation of having a sinking fund is that the latter must be invested in order to make it, by annual accretions, raise a larger sum of money. In doing this, risk, of course, is encountered. Not only one risk, but many. It is questionable whether with the best management such a sinking fund would, in the given time, raise the requisite amount. Indeed, the experience of mankind is that it will not. But, however this may be, to comply with the law, the amount necessary to pay off the principal of the bonds at maturity must be raised each year by direct tax. Whether it should be called a sinking fund after having been raised, and be subject to be used for investment, is a matter which existing laws must govern. We are inclined to think, under the law as it now exists, that the annual tax when so raised could not be appropriated for any purpose whatever, except that for which it was raised. But it is said that this notice contains another provision: that is, if by investment the fund is not sufficient to pay off the principal, the mayor and council will on proper authority, from time to time, supplement that fund by an additional ad valorem tax, or by such funds as may be in the treasury not otherwise appropriated, so as to afford a sufficient amount to pay off the bonds at maturity. The reply to this is, that, however feasible such a scheme may appear, it is not in accord with the law. That contemplates that there should be no uncertainty. Not only so, but before the bonds are issued provision shall be made to raise such an amount as will, beyond all contingency, be sufficient to meet the bonds at maturity. The scheme originated in the special act, followed in the enactment of the ordinance, and promulgated to the voters, by which the principal of the bonds was to be paid off through the medium of a sinking fund, as provided, however plausible, is not a legal one. The plan proposed makes no such provision for the ultimate payment of the bonds as is required. Provision for the levy of a sufficient annual tax for this purpose is a condition precedent to the issue; and it is

our conclusion that the City of Waynesboro can not legally issue bonds until it shall have provided for an annual tax sufficient for the payment both of principal and interest at maturity, whenever that may be; and that the plan adopted by the city, as set out in the record before us, is not such a one as is authorized by the constitution. And we therefore rule that the trial judge erred in passing the order validating and confirming the bonds.

*Judgment reversed.　All the Justices concurring, except Lewis, J., absent.*