CITY OF THOMASVILLE *et al* v. THOMASVILLE ELECTRIC LIGHT AND GAS COMPANY *et al.*

1. A notice of an election under the act of 1904 (Acts 1904, p. 85), providing for the submission of the question of incurring debts other than bonded debts to the taxpayers of counties and municipalities, which notice specifies that the rate of interest shall be "not exceeding 6 per cent. per annum," is not a compliance with the provisions of that act, which requires "the terms of the contract under which the debt is to be incurred" to be set forth.

2. While the charter of the City of Thomasville declares that no person who is not duly registered shall be allowed to vote in any election, there is no provision for registration for any other election than the annual election for municipal officers. Hence, in an election lawfully held at any other time, no registration is required to authorize a person otherwise qualified to vote; and in determining whether two thirds of the qualified voters voted at such election reference must be had to the tally-sheets of the last preceding annual election, and not to the registration lists for that election.

Argued February 10, — Decided March 8, 1905.

Injunction. Before Judge Mitchell. Thomas superior court. December 19, 1904.

*W. C. Snodgrass* and *Fondren Mitchell,* for plaintiffs in error.
*S. G. McLendon* and *Theodore Titus,* contra.

COBB, J. This was an application by certain tax-payers of the City of Thomasville to enjoin the city authorities from incurring a debt which it was alleged they were about to incur under a pretended election claimed to have been held under the provisions of the act of 1904 (Acts 1904, p. 85), carrying into effect the provisions of the constitution with reference to creating debts other than bonded debts by counties and municipalities. The notice of the election was attacked for various reasons, as well as the validity of the election itself. The judge granted the injunction, and the defendants excepted.

1. The act above referred to declares that the notice of election " shall specify the amount of the debt to be incurred, for what purposes it shall be incurred, what amount of the debt is to be paid annually, or at shorter periods, the terms of the contract under which the debt is to be incurred, and the language of the ballots to be used in the election for or against incurring the debt." The notice given specified that the amount of the debt to be incurred was $35,000 ; that the debt was to be incurred " for the purpose of securing for the City of Thomasville, Ga., an electric light and power plant, for the generating electricity to be used by the said city, its residents, and those living in territory contiguous to said city, for lighting and power," and that the debt was " to be paid in annual installments of four thousand ($4,000) dollars, each, on the first day of February of each and every year after said plant shall be in operation by the said city." The notice also declared that the terms of the contract under which the debt was to be incurred shall be such that the debt " shall bear interest at a rate not exceeding 6 per cent. per annum, and that said annual payment of four thousand ($4,000.00) dollars shall be applied; 1. To the payment of the interest on said debt at the time of said payment. 2. To the principal of said debt;" provided that the city authorities might also apply to the payment of the principal from year to year such of the net earnings of the plant as were not necessary to be used for other purposes in connection with the plant. The notice also stated what language should be employed in the ballots to be voted. The question to be determined is whether this notice sufficiently complies with that por-

tion of the act which declared that "the terms of the contract" under which the debt is to be incurred shall be set forth in the notice. The policy of the law of this State is, and has been since the adoption of the present constitution, opposed to the incurring of debts by towns and cities; and it has therefore become the settled rule that all laws in reference to the course to be followed by the public authorities in obtaining consent to contract a debt in behalf of the taxpayers are to be strictly construed, and the consent of the taxpayers is never held to have been given in any case unless the requirements of the law providing the manner in which the debt shall be incurred have been strictly complied with in every material particular. *City of Dawson* v. *Waterworks Co.*, 106 *Ga.* 732; *Smith* v. *Dublin*, 113 *Ga.* 836. Giving to the words "terms of the contract," in the act under consideration, that meaning which strict construction requires to be placed upon them, the statute is not complied with when the rate of interest on the debt to be incurred is not specifically stated. A mere statement that the interest to be paid is not to exceed a stated rate is not a compliance with the law. This question is settled, in principle, by the ruling in *Mayor of Athens* v. *Hemerick*, 89 *Ga.* 674, where it was held that the notice of a bond election, which specified that the bonds were "to bear interest at a rate not to exceed six per cent. per annum, . . the interest to be paid annually on the first days of January and July of each year," did not comply with the provisions of the act of 1879, now contained in the Political Code, § 377, which required that the notice should specify how much interest was to be paid annually. In *Ponder* v. *Forsyth*, 96 *Ga.* 572, 576, Mr. Justice Lumpkin, in referring to the *Hemerick* case, said: "There the notice was wanting in two vitally essential respects: (1) the rate of interest was uncertain," etc.

It was also contended that, under the expression "terms of the contract," if a debt was to be incurred for the purchase of property, the notice should so describe the property to be acquired as that the taxpayers would be informed as to the character and value of the property in all essential respects. We think a notice which states that property is to be secured for a certain purpose, which is a legitimate municipal purpose, is a compliance with the law, so far as the purpose for which the debt is to be incurred is concerned, as the municipal authorities must of necessity be

vested with some discretion in the matter of selecting the property necessary to be used in carrying out the purpose for which the debt is incurred. In the present case we do not think it was absolutely necessary that the amount of land to be secured should be stated, or the number of dynamos, or other matters relating merely to the details of the plant to be installed. All the information should, however, be given on this subject in the notice that can be reasonably given at the time the notice is published. The notice should be as definite as would be a communication from an agent to his principal, asking authority to represent the principal in a particular transaction, and should be more definite and specific than where such an agent is simply asking general authority to represent the principal. If the contract has already been entered into, subject to confirmation by the qualified voters, the taxpayers are entitled to be informed in the notice of exactly what this contract is in all of its details. If, however, no contract has been entered into, but authority is simply asked to make a contract, then the notice should inform the taxpayers of the details of the contract in reference to the property to be secured, and all other details necessary for them to intelligently determine whether it is wise to confer the authority to make the contract. It is not possible to lay down any general rule which will cover all cases, but a compliance with the law demands that the purpose for which the debt is to be incurred shall be set forth in such a way that the taxpayers may know with reasonable certainty how their money is to be expended. Without reference to whether the notice sufficiently complied with the law in this particular, we are clear that it is insufficient for the reason above referred to in reference to the rate of interest.

Other objections were made to the notice, but none of them require any elaborate discussion. It is best that notices of such elections should have a caption addressed to the qualified voters, but when there clearly appears from the notice as a whole the purpose for which it was published, the absence of a caption would not invalidate it. There is nothing in the law requiring the notice to be signed by any particular official. The notice is to be given under the authority of the officers charged with the duty of levying taxes for the municipality, and it must distinctly appear from the notice that it is published under their authority.

A notice signed by the clerk of the municipality, reciting that it is published by authority of the municipal officers, is a compliance with the law.

2. The act of 1904 provides that in determining the question whether or not two thirds of the qualified voters have voted in favor of incurring the debt, the same rules shall govern as at the date of the passage of the act governed in determining the same question in reference to the issuing of bonds by counties and municipalities. If there is anything in the charter of Thomasville which requires a registration of voters for such election, and provision is made for a registration which would be appropriate to such an election, then the question as to whether two thirds of the qualified voters have voted in favor of incurring a debt would be determined by the registration list for that election. *Gavin* v. *Atlanta*, 86 *Ga.* 132. When the provisions of the charter of the City of Thomasville are construed as a whole, it is clear that the registration of voters is only required in the annual election for municipal officers. In section IV of the charter it is provided that, "No one shall be entitled to vote in said election, or any municipal election in said city, unless he is a duly registered voter of said city." Acts 1889, p. 855. The method of registration is set forth in the act just cited, and in an act amending the charter of Thomasville, approved December 18, 1897. Acts 1897, p. 338. When all of the provisions of these two acts are taken together, it clearly appears that the registration required is for the annual election, the acts providing how the registration lists for this election shall be made. There is no provision for a registration list to be made up at any other time than immediately preceding the annual election. If an election to incur a debt is held on the same day, by the same election managers, that the annual election is held, it may be that no one would be entitled to vote at all at such an election unless he was duly registered for the annual election and that the result would be determined by reference to the registration lists. But when the election is held at another time than the day of the annual election, any person qualified to vote in the City of Thomasville would be entitled to vote without reference to whether he had registered; and the question whether two thirds of the qualified voters had voted would be determined by the tally-sheets of the last annual election, and not the registra-

tion lists of that election. See *Howell* v. *Athens*, 91 *Ga.* 139; *Carver* v. *Dawson*, 99 *Ga.* 7.

Complaint was made that the order of the judge granting the injunction was broader than the prayer, and enjoined the city from making any contract for the construction of an electric lighting plant. Properly construed, the order simply enjoined the city from proceeding in any way under authority of the election attacked in the petition, and to this extent the injunction was properly granted.          *Judgment affirmed.     All the Justices concur.*