## SEWELL *et al. v.* CITY OF TALLAPOOSA *et al.*

1. Where the clerk of a municipal corporation certifies exemplifications of the minutes and records of the corporation, under the Civil Code, § 5803, it is essential to the admissibility in evidence of the certificate that the corporate seal be attached.

2. Where an election was held by a municipal corporation, under section 440 et seq. of the Civil Code, to determine whether bonds should be issued for municipal purposes, and on the day succeeding the election the mayor and councilmen, duly assembled, called into the meeting the managers of the election and jointly with them canvassed the returns and declared the result of the election, and in pursuance of such act the mayor and councilmen passed a resolution reciting the declaration of the result in the manner indicated, this was a sufficient compliance with the statute, in regard to joint declaration of the result of such election, to authorize the admission in evidence of a duly certified copy of the minutes of the corporation, showing such resolution, upon a proceeding afterwards instituted under the statute for validating the bonds.

3. The tally-sheets of a previous general election of the muncipality, offered in evidence, were admissible over the objection that a certified copy thereof would be primary evidence.

4. The judgment validating the bonds conformed to the pleadings upon which it was based.

5. The proceeding to issue bonds contemplated an aggregate amount, composed of a certain amount of bonds to be sold for waterworks purposes, a certain amount for school purposes, and a certain amount for sewer purposes. In submitting the question to the voters due provision was made for submitting the questions as to the issue of the bonds for the several purposes separately, so that one would not be dependent upon the other, and that the voters would not be confused or coerced in the matter of voting for or against the bonds for either purpose. After such an election has been held and it is desired to obtain a judgment validating the bonds under the provisions of the statute, it is not necessary that separate proceedings shall be instituted for each series of bonds to be validated, but they may all be included in the same action.

6. Relatively to the issue of twenty-five thousand ($25,000) dollars of bonds for school purposes, the published notice calling for the election to vote upon the question of issuing bonds was sufficiently definite, and was not contradictory.

7. A provision by a municipal corporation for the assessment and collection of an annual tax sufficient in amount to pay the principal and interest of a bonded debt within the time prescribed by the constitution is a sufficient compliance with the constitution, although the ordinance making the provision provides that the interest and a portion of the principal may be from year to year paid from other sources, if funds from such sources are available at the time the interest and principal are due.

8. Where the act of the legislature creating the charter of a municipal corporation makes no provision for a system of registration of voters to vote at a special election held under the Civil Code, § 440 et seq., to determine whether bonds shall be issued by the municipality, in order to determine whether two thirds of the qualified voters have voted for the issuance of the bonds reference must be had to the tally-sheets of the last general election held for such municipality.

(*a*) Properly construed, the charter of the City of Tallapoosa did not contain any provision for the registration of voters for a special election on the question of issuance of bonds as indicated above.

9. Where a petition to validate bonds under the Civil Code, § 445 et seq., containing the allegations prescribed by statute, has been filed by the solicitor-general, and objectors to the validation of the bonds do not in their intervention raise the point that the proposed amount of bonds issued is in excess of the constitutional limitation as to incurring an indebtedness, and the bonds are validated, the intervenors can not for the first time, in their bill of exceptions to the judgment of validation, successfully assign error upon such judgment on the ground that it did not affirmatively appear that the proposed bond issue was within the constitutional limitation.

10. In view of the authority of this court, under the Civil Code, § 6205, "to award such order and direction to the cause in the court below as may be consistent with the law and justice of the case," the error committed upon the trial, as indicated in the first headnote, will not, under all the circumstances of the case, require a reversal.

APRIL 11, 1916.

Validation of municipal bonds.  Before Judge Bartlett.  Haralson superior court.  July 30, 1915.

The solicitor-general, upon application of the mayor and council of the City of Tallapoosa, instituted a proceeding in the name of the State, under the Civil Code, § 440 et seq., to validate certain bonds, after an election had been held in the city to determine whether the bonds should be issued.  In response to a rule nisi duly issued and served, the city filed an answer as authorized by the statute.  W. V. Sewell and others, intervening as citizens and taxpayers, filed an answer in which they admitted that the City of Tallapoosa was a municipal corporation in the county of Haralson and in the Tallapoosa judicial circuit in the State of Georgia, and that J. R. Hutcheson was solicitor-general of the Tallapoosa circuit, but denied each and every other allegation of the petition.  The intervenors demurred to the answer of the city, and the city demurred to the answer of the intervenors; but no judgment was entered upon the demurrers, and there was no assignment of error relative to any ruling on them.  Upon the hearing

the judge passed an order validating the bonds, and the intervenors excepted. The other material facts sufficiently appear in the opinion of the court.

M. J. Head and H. J. McBride, for plaintiffs in error.

Lloyd Thomas, G. R. Hutchens, and J. R. Hutcheson, solicitor-general, contra.

ATKINSON, J. 1. On the hearing counsel for the State offered in evidence certain documents, namely: (1) A copy of the ordinance calling for the election. (2) An extract from the minutes of the mayor and council, showing the call of a meeting of the mayor and council and the appointment of managers and clerks for the election. (3) An extract from the minutes of the mayor and council, showing the call of a meeting to receive the returns of the election. (4) A copy of a resolution of the mayor and council, showing a declaration of the result of the election. (5) The original tally-sheets of the last general election for municipal officers. To the last-named paper was attached a certificate of the clerk of council, to the effect that it purported to be the original tally-sheet; and to each of the other papers was attached a certificate of the clerk to the effect that the paper was a correct copy of what it purported to be. All of the papers were objected to on the ground that they were not properly certified, in that the clerk failed to affix to his certificate in each instance the corporate seal of the city. Other objections to the introduction of papers numbers four and five were urged, and will be dealt with in divisions two and three of this opinion. The several objections were overruled, and all of the papers admitted. Error was duly assigned. It was stated in the bill of exceptions that none of the certificates to the papers were under seal, but that after the objections were made and the judgment in the cause signed a seal was affixed to each of the certificates. It is declared in the Civil Code, § 5803: "Exemplifications of the records and minutes of municipal corporations of this State, when certified by the clerks or keepers of such records, under seal, shall be admitted in evidence under the same rules and regulations as exemplifications of the records of the courts of record of this State." In Central Ry. Co. v. Bond, 111 Ga. 13 (36 S. E. 299), it was declared: "An exemplification of a municipal ordinance is not admissible in evidence unless duly certified under the corporate seal." This ruling applies the

statute according to its express provision, and holds that the corporate seal is essential to the validity of a certificate by the clerk to documents he is authorized to certify. See also *W. & A. R. Co. v. Hix*, 104 *Ga.* 11 (30 S. E. 424). Applying the law as thus stated, it was erroneous to admit the documentary evidence over the objection that, on account of the failure to affix the corporate seal, the papers were not properly certified. The fact that after the judgment the seal was attached can not be taken into consideration in determining whether it was error to admit the evidence on trial. However, in another division of this opinion, the effect of subsequently attaching the seal will be referred to.

2. A further objection to the introduction of the resolution of the mayor and council, which was the fourth document objected to, was that the declaration of the result did not appear to have been made jointly by the officers of the municipality and the managers of the election, as required by statute. This objection is not borne out by the record. The resolution declaring the result of the election was adopted by the mayor and councilmen duly assembled, and recited that the managers of the election were present and acted jointly with the mayor and council in declaring the result.

3. The original tally-sheets of the last general election were objected to on the further grounds, that a certified copy of that paper was primary evidence, and that the paper was irrelevant. Tally-sheets of general elections of the city are not required by law to be filed in the office of the clerk of the municipality, or to be entered upon the minutes thereof, and there was no evidence of any ordinance requiring such; and consequently the tally-sheets did not become records of the municipality. Exemplifications of "records and minutes" of municipal corporations, as referred to in the statute (Civil Code, § 5803), do not include tally-sheets of former municipal elections. The objection to the paper as being irrelevant was upon the hypothesis that the charter of the City of Tallapoosa provided for the registration of voters for all municipal elections, including elections to determine whether bonds should issue, and that the registration must be looked to in order to determine whether the requisite constitutional majority had voted for the issue of bonds. This question will be more elaborately dealt with in a subsequent division of this opinion. It is sufficient

here to state that under a proper construction of the charter of the municipality it contained no provision for the registration of voters for an election by the municipality to determine whether bonds should issue, and the evidence was relevant.

4. It was insisted that the judgment validating the bonds was contrary to law, because it did not conform to the allegations of the petition, the rule nisi, and the published notice of the hearing to be had thereon. To the petition filed by the solicitor-general to the superior court was attached as an exhibit a copy of the notice to the solicitor-general by the mayor and council, requesting him to institute the proceedings for validation of the bonds. It was alleged that an order was desired, confirming and validating the issue of $35,000 in bonds to be known as waterworks bonds, $25,000 in bonds to be known as school bonds, and $5,000 in bonds to be known as sewer bonds. The rule nisi issued upon the petition and ordered to be published contained the same recital as to the character and amount of the bonds. The judgment validating the bonds conformed to the petition and rule nisi in respect to these matters.

5. It was also urged that the judgment validating the bonds was contrary to law, because it included three separate and distinct bond issues which were dependent upon three separate and distinct states of facts as a basis for the validation of each bond issue. The pleadings and judgment based thereon stated the gross amount of bonds to be $65,000, and showed that this was made up of bonds for specified amounts for three separate purposes, as clearly indicated. The question of issue of bonds relatively to each purpose was submitted in such manner as not to produce confusion or coerce the voters in any manner in voting for or against the bonds to be issued for either purpose. In submitting these questions care was observed to avoid such confusion and coercion as was condemned in *Gracen* v. *Savannah,* 142 *Ga.* 141 (3), 142 (82 S. E. 453). After such an election, where a petition is brought under the Civil Code, § 445 et seq., for validation of the bonds, it is not necessary that separate proceedings shall be instituted for each series of bonds to be validated, but they may all be included in the same action. The proceeding to validate bonds is purely statutory, and there is nothing in the statute which requires separate validation proceedings for every purpose for which the bonds are to be issued.

6. It is urged that the judgment, in so far as it related to $25,000 for school bonds, was contrary to law, because the published notice calling the election relating to such bonds was indefinite, did not specify the purpose for which the bonds were to be issued, and did not specify any one general purpose for which the bonds were to be issued, but specified several general purposes. It was stated in the notice with reference to the school bonds that the bonds were to be sold "for the purpose of building, repairing, enlarging, furnishing, and heating the necessary school buildings for the use of public schools of said city, and of purchasing and acquiring such additional lands and other property as may be necessary for such purposes." This indicated a general purpose to make provision for suitable buildings in which to conduct the public schools of the city and furnish equipment therefor, and, when necessary, to provide sites on which to erect school buildings. The specific things mentioned bear relation to the object to be attained; and each enters into and forms a part of the general purpose. The statement of several things does not operate to render indefinite the purpose for which the bonds were to be issued, and the notice therefore was sufficiently definite. The notice referred to contains the further provision: "Voters of said election favoring the issue of bonds for the purpose of building, repairing, enlarging, furnishing, and heating the necessary school buildings for the use of the public schools of said city shall have written or printed on their tickets the words, 'For the issue of twenty-five thousand ($25,000) dollars for school bonds.' Voters opposing the issue of such bonds shall have written or printed on their tickets the words: 'Against the issue of twenty-five thousand ($25,000) dollars for school bonds.'" It was urged that this last provision of the notice, when compared with the language of the notice quoted in the first part of this division, showed a variance of such character as to produce confusion and render the notice vague and doubtful, and was insufficient to inform the voters as to the question upon which they were to vote. It would require an unauthorized construction of the instrument to hold it doubtful as claimed. There is a slight difference in the latter excerpt from the former, in that it omits to refer to the purchase of land. But the latter excerpt is dealing merely with the form of the ballot, and should not be construed as making a material change in the language of the former merely

because it was not as full as the former.   The difference in the language does not amount to a substantial variance, and was not calculated to bring about confusion as to the purpose for which the bonds were to be issued.

7.   It was urged that the judgment validating and confirming the $35,000 of waterworks bonds was contrary to law, because the provision of the notice which called for the levy of an annual tax for the payment of the principal and interest of such bonds was contrary to the constitution of this State, for the reason that the authority to levy the annual tax for such purpose was not absolute, but contingent; and that the contingency constituted an inducement to the voters to vote for the issue of the bonds, and that as the provision was illegal it vitiated the election for the issue of waterworks bonds.   The published notice of the election provided for the issue of $35,000 dollars of bonds of the city, for the purpose of purchasing a designated system of waterworks, and making changes, repairs, additions, and improvements thereon, the bonds to be known and designated as waterworks bonds, bearing serial numbers from one to seventy inclusive; the bonds to mature and be paid in the order of their serial numbers, beginning with number one.   The first of the bonds to be paid were to mature on January 1, 1925, and subsequent numbers were to mature at other stated dates at intervals of five years apart, until the last should be paid on January 1, 1944.   All of the bonds were to bear interest at 5 per cent. per annum, and to be paid annually on the first day of January of each year after the issue and sale of the bonds, and while the bonds or any of them were outstanding and unpaid.   The amount of interest to be paid on the bonds annually from the date of the issue and sale was stated, and it was provided that the amount should be correspondingly decreased after the payment of the several bonds as they shall mature.   In providing for the payment of the bonds it was declared:   "Should said issue of bonds be authorized by the qualified voters of said city, the annual net earnings of said system of waterworks, if any, shall be applied to the payment of interest on said bonds as above provided, so long as any of said bonds are outstanding and unpaid.   The excess of said annual net earnings, if any after payment of said interest, to constitute a sinking-fund, and be applied to the payment of the principal of said bonds as above provided, so long as any of said

bonds are outstanding and unpaid. Should there be no such annual net earnings for any year while any of said bonds are outstanding and unpaid, or should such net earnings for any such year be insufficient to pay the interest to be paid for such year, as above provided, an annual tax shall be levied and collected by the mayor and council of said city upon the taxable property of said city, for such year, sufficient in amount to pay the interest for such year, either in whole if there be no such net earnings for such year, or in part as supplemental to the amount of such net earnings for such year available for the payment of the interest for such year. Should the sinking-fund as above provided be sufficient to make the payment of one thousand ($1000.00) dollars on the principal of said bonds on January first, 1925, as above provided, then it shall be so applied; but if there should be no such sinking-fund, an annual tax shall be levied and collected by the mayor and council of said city upon the taxable property of said city for the year 1924, and for each and every year thereafter during which any of said bonds are outstanding and unpaid, sufficient in amount to make the annual payments on the principal of said bonds, as above provided, either in whole if there be no sinking-fund for such year, or in part as supplemental to the amount of the sinking-fund available for such year, in the payment of the amount of the principal of said bonds to be paid for such year. And the sum so raised to pay the principal of said bonds shall be applied exclusively to the payment of said principal, and the sum so raised to pay the interest on said bonds shall be applied exclusively to the payment of said interest." It was the plan of the city to conduct a system of waterworks from which net profits might arise, and to appropriate any money from that source to payment of annual interest, and to place any surplus therefrom in a sinking-fund to be applied on the payment of the bonds as they should mature. While this was a plan to apply the net annual income from the waterworks to the payment of these bonds, yet that was not intended as a substitute for a provision to pay the interest and principal of the bonds by the levy of an annual ad valorem tax. Ample provisions contemplated the levy of such a tax to meet all interest and principal, without regard to net profits from the waterworks system. If the city should derive net profits, there is no reason why it should not apply them to payment of bonds, if desired. It could not affect

the right to issue bonds so long as there was no attempt thereby to substitute such profits as a source of payment of the bonds in lieu of taxation as required by the constitution. The mere fact that there should be a right to apply any possible net profits to the bonds while there was ample provision to meet the bonds by levy of an ad valorem tax will not render the bonds illegal. The case falls within the principle of *Epping* v. *Columbus,* 117 *Ga.* 263 (11), 264 (43 S. E. 803), where it was held: "A provision by a municipal corporation for the assessment and collection of an annual tax sufficient in amount to pay the principal and interest of a bonded debt within the time prescribed by the constitution is a sufficient compliance with the constitution, although the ordinance making the provision provides that the interest and a portion of the principal may be from year to year paid from other sources if funds from such other sources are available at the time the interest and principal are due." It is not required that before incurring a bonded debt the municipality proposing to issue bonds shall, at or before incurring the debt, provide for the levy of an annual tax sufficient to pay the annual interest and provide a sinking-fund for retirement of the debt as the same shall become due. It is sufficient if the levy of the tax be provided for before the actual issuance and sale of the bonds, and it is not necessary that this provision be made before validation. *Woodall* v. *Adel,* 122 *Ga.* 301 (50 S. E. 102); *Oliver* v. *Elberton,* 124 *Ga.* 64 (52 S. E. 15). Nothing here stated is at variance with the decision in the case of *Wilkins* v. *Waynesboro,* 116 *Ga.* 359 (42 S. E. 767), in which there was an attempt to substitute a provision for payment out of other funds for a provision for payment from funds to be raised by taxation.

8. It was also contended that the judgment was contrary to law, because it affirmatively appeared at the hearing that the election was held without any registration therefor, although it is provided by the charter of the City of Tallapoosa that there shall be a registration for any municipal election in the city. It was charged that it was the duty of the city authorities to open the registration books of the city, and that the lack of a registration for the election rendered the election void, so that the returns thereof could not be made the basis of a judgment for validating the bonds. This brings up the same question that was raised by

the objection to the admissibility of the tally-sheets, referred to in the third division of this opinion. The contention is predicated upon the hypothesis that the charter of the municipality contained a provision for the registration of voters for bond elections. If the charter did not provide for bond elections, the general law (as in the Civil Code, § 443) would apply, which is as follows: "In determining the question whether or not two thirds of the qualified voters in said county, municipality, or division voted in favor of the issuance of said bonds, the tally-sheets of the last general election held in said county, municipality, or division shall be taken as a correct enumeration of the qualified voters thereof." *Wilkins* v. *Waynesboro,* supra; *City Council of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696 (3), 729-730 (32 S. E. 907); *City of Thomasville* v. *Light Co.,* 122 *Ga.* 399 (2), 403 (50 S. E. 169). The caption of the act creating the charter of the City of Tallapoosa commenced: "An act to repeal an act approved December 26, 1888, to incorporate the City of Tallapoosa in the county of Haralson, and to adopt a new charter for the said city, to provide for the manner of electing and appointing all municipal officers of said city." Then follows a statement of a number of matters which have no reference to the subject of elections, and need not be stated. Then follow these provisions: "to provide for registration of voters for elections of officers of said city; to define the limits of said city, and for other purposes." By section 4 of the act it is provided that at stated times an election shall be held in the city "for a mayor and five councilmen," and the qualifications and the terms of such officers are prescribed. By section 12 it is provided that if the office of mayor or councilman should become vacant at any time more than sixty days before a regular election for mayor and councilmen, an election may be ordered to fill the office or offices so vacated; and if such office or offices shall become vacant in less than sixty days next before such regular election, then said vacant place or places shall be filled by appointment of members of council remaining. By section 13 of the act provision is made for the appointment of freeholders of the city to act as managers "in all elections for mayor and councilmen, whether at a regular election or special election to fill a vacancy, as provided in the preceding section." By section 24 it is provided that "the clerk of the council shall be the registrar of the qualified

voters of said city, and shall open a book for the purpose of such registration thirty days next preceding *any municipal election.*" Then follow provisions as to the duty of the registrar and the qualification of voters, and other matters. The concluding sentences of the section are: "No person shall be allowed to vote at *any municipal election* in said city who has not been duly regis-. tered according to the provisions hereinbefore set forth. Any person voting in any such election without having been registered shall be guilty of a misdemeanor, and upon conviction shall be punished as prescribed in section 1039 of the Penal Code of this State." All other portions of the charter are silent upon the subject of elections and registration of voters for elections. The caption of the act expressly refers, in two instances, to the power of the municipality to hold elections, and in each instance the elections are referred to as elections for officers of the city, and no reference is therein made to elections for any other purpose. The caption concludes with the words, "and for other purposes." Sections 4, 12, and 13 of the act are the only provisions of the charter which purport to authorize the municipality to hold elections, and in each of them the elections authorized to be held are specifically mentioned as elections for mayor and councilmen of the city. Those do not include elections to determine whether bonds shall issue, or any election other than those specified, namely, elections for officers of the municipality. In construing the language "·any municipal election," as employed in section 24, providing for the registration of voters, the reasonable intendment would be that these words applied to such elections as the municipality, by the terms of its charter, was authorized to hold. If given that construction, section 24 provided merely for registration of voters for general or special elections to be held for mayor and councilmen, as specified in sections 4 and 12 of the act. In cases closely analogous similar rulings have been made. For instance, in *Kaigler* v. *Roberts,* 89 *Ga.* 476 (15 S. E. 542), it was held: "A local act for registration of voters in a given county, which declares it unlawful to vote at any election without having first registered, and then proceeds to require registration biennially in those years in which elections are held for Governor, members of the General Assembly, members of Congress and presidential electors, applies only to voting at elections for the officers designated in the act,

leaving the general law to operate upon all other elections, includ-
ing an election held under § 508 (i) et seq., of the code, to deter-
mine whether a county debt shall be created by issuing bonds for a
public object, such as the erection of a new court-house for the
county." In *City of Thomasville* v. *Light Co.,* supra, it was held:
"While the charter of the City of Thomasville declares that no per-
son who is not duly registered shall be allowed to vote in any elec-
tion, there is no provision for registration for any other election
than the annual election for municipal officers. Hence, in an
election lawfully held at any other time, no registration is re-
quired to authorize a person otherwise qualified to vote; and in
determining whether two thirds of the qualified voters voted at
such election, reference must be had to the tally-sheets of the last
preceding annual election, and not to the registration lists for that
election." As the charter of the municipality made no provision
for registration of voters for elections to determine whether mu-
nicipal bonds should issue, the general law as embodied in the
Civil Code, § 443, was applicable. And it follows that the tally-
sheets of the last general election were admissible in evidence, and
the judgment of validation was not contrary to law on the ground
that there was no registration of voters for the bond election.

9. It was also urged that the judgment was contrary to law,
on the grounds, that there was no evidence before the court as to
the assessed value of all the taxable property in the City of Talla-
poosa, and that it was not shown that the debt to be incurred by
the issuance of the bonds would not exceed seven per centum of the
assessed value of the taxable property in the city, and that it was
not shown that the municipality had the authority to incur the in-
debtedness or to levy an annual tax to pay the principal and in-
terest. In the Civil Code, § 446, there are specified certain allega-
tions which the solicitor-general is required to make in his applica-
tion to validate bonds. The language of the statute is as follows:
"Within twenty days from the date of such service as is provided
in the preceding section, the solicitor-general or the attorney-gen-
eral, as the case may be, shall prepare and file in the office of the
clerk of the superior court of the county in which the election was
held a petition, directed to the superior court of said county, in
the name of the State of Georgia and against such county, munici-
pality, or division desiring to issue bonds under such election, set-

ting forth the service of the notice as provided in the preceding section, the name of the county, municipality, or division seeking to issue bonds, the amount of the bonds to be issued, for what purpose to be issued, what interest they are to bear, how much principal and interest to be paid annually, when to be paid in full, and the further fact that an election was held for the issuance of said bonds, and that said election is prima facie in favor of the issuance of the bonds, and shall obtain from the judge of said court an order requiring the county, municipality, or division, by its proper officers, to show cause at such time and place, within twenty days from the filing of the petition, as the judge of the court may direct, why the bonds should not be confirmed and validated, which petition and order shall be served in the manner now provided by law for the service of petitions upon counties, municipalities, or divisions, and to such petition the officers of such county, municipality, or division shall make sworn answers within the time prescribed herein." In section 447 provision is made for persons interested to intervene and show cause why the bonds should not be validated. The language of the latter section is as follows: "Within the time prescribed in the order, the judge of said superior court shall proceed to hear and determine all of the questions of law and of fact in said cause, and shall render judgment thereon; and in the event his judgment shall be in favor of the issuance of the bonds, a judgment and order shall be entered to that effect, and any citizen of the State of Georgia, resident in such county, municipality, or division so desiring to issue said bonds, may become a party to said proceedings, and, if dissatisfied with the judgment of the court confirming and validating the issuance of the bonds, may except thereto within twenty days from the judgment, as in the case of injunctions, and upon the hearing in the Supreme Court such bill of exceptions shall be heard in accordance with the practice regulating the hearing of bills of exceptions in criminal cases." The foregoing provisions of the code do not require that the petition should allege that the amount of the bonds is within the constitutional limitation as to the debt to be incurred by a municipal corporation or political division. Such matter, however, may be urged by an intervenor on the trial. If he should urge such matter, the burden is upon him to plead and prove it. *Harrell* v. *Whigham,* 141 *Ga.* 322 (80 S. E. 1010);

*Spencer* v. *Clarkesville,* 129 *Ga.* 627 (59 S. E. 274)'; *Epping* v. *Columbus,* supra. Where a petition containing the allegations prescribed by statute has been filed by the solicitor-general, and the intervenor in his objections does not raise the point that the proposed amount of bonds issued is in excess of the constitutional limitation as to incurring an indebtedness, and the bonds are validated, he can not for the first time, in his bill of exceptions, successfully assign error upon such validation upon the ground that it did not affirmatively appear that the proposed bond issue was within the constitutional limitation.

10. The only errors committed on the trial related to the admissibility of documentary evidence, where the clerk of the council had failed to attach the seal of the municipality to his certificate certifying the documents. Under the Civil Code, § 6205, which gives this court authority to give direction, and which is as follows: "The decision in each case shall be entered on the minutes, and it shall be within the power of the Supreme Court to award such order and direction to the cause in the court below as may be consistent with the law and justice of the case," it would be competent for this court, in reversing the judgment, to give direction permitting the defendant in error to attach the corporate seal on terms, and, if done, to affirm the judgment. It appears from the bill of exceptions that the seal has been duly attached; so that it appears that what this court might direct done in that .regard has already been accomplished. Under these circumstances, and in view of the power of this court as stated in the statute above quoted, the judgment validating the bonds will not be reversed on account of the error mentioned.

*Judgment affirmed. All the Justices concur.*