## HARRELL et al. v. TOWN OF WHIGHAM.

1. The charter of the town of Whigham confers on the mayor and council
   of that municipality the authority to pass an ordinance providing for
   the registration of qualified voters so as to entitle them to vote at an
   election for the purpose of determining the question of whether the
   town shall issue bonds for certain municipal ·purposes.
2. Where statutory proceedings are brought for the purpose of validating
   municipal bonds, under the Civil Code (1910), § 445 et seq., and are
   contested by citizens who become parties thereto and deny the truth of
   the substantial allegations of the petition, the burden is on the State,
   acting through its solicitor-general, to prove the material facts which
   are requisite to obtain validation; and where there is a total absence
   of such proof, it is error for the court to render judgment validating
   the bonds.
3. The ruling made in the first headnote is applicable where the petition
   filed by the solicitor-general alleges sufficient facts to warrant valida-
   tion of the bonds and the answer filed by the municipality admits the
   facts alleged.
(a) The decisions in the cases of *Epping* v. *Columbus*, 117 *Ga.* 263 (43
    S. E. 803), and *Spencer* v. *Clarkesville*, 129 *Ga.* 627 (59 S. E. 274),
    have been reviewed, and, in so far as they conflict herewith, are over-
    ruled. ·

                            FEBRUARY 18, 1914.

Validation of municipal bonds.    Before Judge Frank Park.
Grady superior court.    August 23, 1913.

*S. P. Cain* and *W. J. Willie,* for plaintiffs in error.

*R. C. Bell, solicitor-general,* and *R. R. Terrell,* contra.

HILL, J.   The plaintiffs in error, as contestants in an application
to validate certain bonds of the Town of Whigham, except to the
order of the court below validating the bonds.   Two controlling
questions are raised by the record for decision:   (1) Does the
charter of the Town of Whigham confer on the mayor and council
the authority to pass an ordinance providing for the registration
of qualified voters so as to entitle them to vote at an election for
the purpose of determining the question whether the town shall
issue bonds for certain municipal purposes?   (2) On whom is the
burden of proof, in cases brought for the purpose of validating
bonds under the Civil Code, § 445 et seq.?

1.  By the charter of the Town of Whigham (Acts 1896, p. 261,
sec. 5) it is provided, "That all voters at any and all elections shall
be qualified, provided by paragraph three of this charter, and
have in addition thereto complied with all ordinances of regis-
tration that said mayor and councilmen may provide for registra-

tion of voters." Section 3 of the act provides, "That all male inhabitants who have attained the full age of twenty-one years and have been a resident of the town for twelve months just preceding the election, and have paid all duties, taxes, fines, and forfeitures due said town, shall be deemed and held eligible to hold any office in said town, and that no person shall hold more than one office at any one time." These portions of the charter were unskilfully drawn, but the two sections, when read together, make it reasonably clear that the legislature had in mind and intended to do two things: (a) To confer upon the mayor and council of the Town of Whigham the power and authority to pass ordinances for the registration of qualified voters; and (b) to prescribe who of the male inhabitants of the town should be qualified to vote "at any and all elections" in the town. In pursuance of this charter provision, the mayor and council did pass an ordinance, reciting "that all male persons who have attained the full age of twenty-one years old, and have been bona fide citizens of the Town of Whigham twelve months prior to all elections, and have paid all duties, taxes, fines, and forfeitures due the town, shall register their names, occupation, and age with the clerk of the council each year upon a book showing the same prior to August 1st, 1913, and each year thereafter, shall be held to be legal voters at any and all elections," etc. It was further provided that "the managers of any and all elections shall be governed by the certified list of registered voters, and shall allow no one to vote whose name does not appear upon said certified list of voters," etc. It will be observed that section 3 of the act of 1896 provides who shall be eligible to hold any "office" in the Town of Whigham, and section 5 of the act evidently intended to apply the same qualifications to "voters" as were required of those who held office; and while, as stated above, the act is not skilfully drawn, this was the evident purpose of the legislature, and the mayor and council of the town have so construed it, and we think correctly. The ordinance is in substantially the same language as section 3 of the charter, which provides for the qualification of those who can hold office in the Town of Whigham. We think, therefore, that, construing the two paragraphs of the charter together, they are not so vague and indefinite as to make them void for uncertainty, and that the language of the charter is broad enough to cover "all elections" held within the municipality,

whether such elections are strictly "municipal elections" or not. The language is broad enough to cover such bond elections as the one under review. The language of the charter under review is much broader than that used in the cases of *Carver* v. *City of Dawson*, 99 *Ga.* 7 (25 S. E. 832), and *City of Thomasville* v. *Thomasville Electric Light Co.*, 122 *Ga.* 399 (50 S. E. 169), and other cases cited therein. In the *Carver* case it was held that a clause in the charter of the City of Dawson which provided for "the registration of all voters in said city," should not be exercised with reference to any elections except for municipal officers of the city. And in the *Thomasville* case, where the charter provided that no person who was not registered should be permitted to vote at any election, it was held that "there is no provision for registration for any other election than the annual election for municipal officers." In the instant case the charter provides that "all voters at any and all elections shall be qualified," etc. This language is broad enough to cover an election held within the municipality to determine whether bonds should be issued for municipal purposes.

2. The next question which arises is whether the presiding judge erred, under the pleadings and evidence before him, in granting an order validating the bonds. The statute requires that the solicitor-general shall file a petition setting forth certain facts; and that the presiding judge shall, within the time prescribed by his order, proceed to hear and determine the questions of law and of fact in the case and render judgment thereon. It also authorizes any citizen of the State of Georgia, resident in the county, municipality, or division desiring to issue the bonds, to become a party to the proceedings and contest the validation sought. Civil Code, §§ 445, 446, 447. The judgment of validation is declared to be conclusive. § 448. It will thus be seen that very important rights, not merely of the municipal corporation as such, but of the citizens and taxpayers thereof, are involved in this proceeding, and are sought to be foreclosed by the judgment rendered. A grave duty and responsibility were placed upon the judge of the superior court. Such proceedings do not stand like a case between two private parties, but they will affect the rights and interests of many citizens and taxpayers. The judge should, therefore, not validate bonds as a mere matter of course, but should see to it that the law is complied with before a debt is saddled upon the taxpayers.

It is not necessary for us to determine in this case whether in any event, where a municipality desires to issue bonds and admits that it is issuing them legally, this would be sufficient to authorize a validation in the absence of proof, where citizens do not become parties; but where citizens do become parties to the proceeding; they undoubtedly have the rights of all other parties thereto. If the petition of the solicitor-general has alleged the facts required by the statute, and citizens are made parties for the purpose of contesting the validation of the bonds, necessarily they stand as quasi defendants. When they deny the substantial allegations of the petition of the solicitor-general, this places upon *him* the burden of proving such allegations. In certain cases, where citizens who have become parties raise objections which do not appear in the pleadings between the solicitor-general and the municipality, but which depend for their support upon aliunde evidence, the burden of sustaining such allegations is upon the citizens alleging them. *Spencer* v. *City of Clarkesville*, 129 *Ga.* 627 (59 S. E. 274). This may be analogized to the affirmative pleading of a defendant in an ordinary action at law. In ordinary lawsuits, an allegation by the plaintiff and a denial by the defendant puts the burden upon the plaintiff. If the defendant sets up an additional affirmative plea, as to it the burden is upon him. So in a proceeding to validate bonds, where the solicitor-general, in the name of the State, alleges certain necessary facts, and these are denied, the burden is upon him to prove the facts essential to the issuance of the bonds. The sustaining of other affirmative defenses or objections may rest upon the party raising them. The mere fact that the municipal corporation—which is the real moving party in the issuance of bonds, and which is recognized by the State as being the party desiring to issue them—makes admissions in its answer that it is doing so legally, can not operate as evidence against citizens who have become parties, and who deny the allegations of the petition.

3. In the case before us, the solicitor-general, in the name of the State, filed a petition making certain allegations in regard to the steps taken preceding the proceedings to validate the bonds. Citizens became parties and denied the truth of the substantial allegations thus made. This placed upon the State, represented by the solicitor-general, the burden of proving the material allegations necessary to obtain a judgment of validation. In other words, it

placed upon him the burden of making out his case, when it was alleged on the one hand and denied on the other. He entirely failed to do so, and introduced no evidence of the correctness of the allegations that the proper steps had been taken for the issuance of the bonds in order to authorize validation. This being true, he failed to make out any case for validation—at least as against the contestants; and the entering of a judgment of validation was consequently erroneous. Under this state of facts, we do not deem it necessary to go further and refer to the evidence introduced by the contestants, or to refer to the point made as to the order continuing the hearing and requiring further notice to be given. As no case was made on behalf of the State, through its solicitor-general, by the introduction of evidence, it was plainly error to enter a judgment declaring, in effect, that a case for validation had been made; and it is unnecessary to discuss other questions.

The decisions in the cases of *Epping* v. *Columbus,* 117 *Ga.* 263 (43 S. E. 803), and *Spencer* v. *Clarkesville,* supra, have been reviewed by us, and are overruled in so far as they conflict with this opinion.          *Judgment reversed.   All the Justices concur.*