STEPHENS *et al. v.* SCHOOL DISTRICT NO. 3, HABERSHAM COUNTY.

FISH, C. J. 1. The trial court did not err in overruling the demurrer of the intervenors to the petition. Code (1910), § 446; *Davis* v. *Orland Con. School Dist.*, 152 *Ga.* 76 (108 S. E. 466).

(*a*) It is not necessary that a list of the voters and the tally-sheets of the election should be set out in, or attached to, the petition; nor is it requisite that the petition should allege that, in determining whether two thirds of the qualified voters of the school district voted in favor of bonds, resort was had to the tally-sheets of the last general election held in the district. Nor are the allegations of paragraphs 8 and 9 of the petition mere conclusions of the pleader; nor is paragraph 8 subject to. demurrer because it fails to allege the value of the taxable property in the school district at the date of calling the election; nor is paragraph 9 subject to demurrer because it does not state who gave the notice required by section § 440 of Park's Code, a copy of such notice being attached to the petition as an exhibit, showing who gave it.

(*b*) The petition was not subject to demurrer because the. notice to the solicitor-general was not given by the proper officer. This notice must be given by the officer or officers charged with declaring the result of the election. Civil Code (1910), § 445. The board of trustees or board of education declares the result of the election. Code of School Laws (Ga. Laws 1919, pp. 288, 345, sec. 143). By this last provision a majority of the trustees may hold the election. The notice was signed by two of the trustees by their attorney; and this was a sufficient compliance with the statute.

(*c*) The election was not void because the ballots had printed on them, " For Bonds " and " Against Bonds." The statute under which this election was held provides that "the ballots shall have written or printed thereon, ' For schoolhouse ' or ' Against schoolhouse.' " Sec. 143, Code of School Laws, supra; 1 Park's Code, § 1545(a). An election will not be declared void because of a slight departure from the phraseology which the statute prescribes shall be written or printed on the ballots, when it is clear, from the ballots cast, that the voters' intention with respect to the question submitted is fully indicated. *DuPre* v. *Cotton*, 134 *Ga.* 316 (67 S. E. 876). The public notice of the election provided that the voters should vote " For schoolhouse bonds " and " Against schoolhouse bonds;" and construing that notice and the form of the ballots together, it is clear the voters fully understood that they were voting for or against a schoolhouse.

(*d*) The petition was not subject to demurrer on the ground that it did not allege that two thirds of the voters of said district voted in favor of bonds; this allegation, in substance, being in the petition.

2. In a proceeding to validate bonds of a school district, proposed to be issued for building and equipping a schoolhouse, the burden is on the State, acting through the solicitor-general, to prove the material facts necessary to obtain validation. *Harrell* v. *Whigham*, 141 *Ga.* 322 (80 S. E. 1010). But after the election has been held, and on a proceeding to validate such bonds, the burden would not be upon the State to show that the county had been legally laid out into school districts, although there was an allegation in the petition, " that School District No. 3 is a district in which a local tax is now or may hereafter be levied for school purposes." *Davis* v. *Orland Con. School Dist.*, supra.

3. In 1911 Habersham County was laid off into school districts, and a map thereof was made and filed in the office of the ordinary of said county. In 1919 the county board of education rearranged the school districts of the county, and redistricted the county by changing some of the lines of the old districts, thus taking parts of the old districts and putting the same in other districts; and, in rearranging the districts, created School District No. 3, by consolidating Mud Creek District, most of Garrison District, and part of one or more districts. A map of these rearranged districts was made. Thereafter changes were made by the county board of education in the boundaries of this district. Intervenors insist that the county board of education was without power to make this rearrangement of the districts, in consequence of which School District No. 3 was illegally created, and its creation was void, for which reason they insist the election for these bonds was void. *Held*, that under the power to consolidate schools (sec. 90 of Code of School Laws), " to divide school districts into two or more districts " (sec. 91 Id.), " to consolidate two or more districts or parts of districts, to add any part of one district to any other district, and to change the lines of any district at any time, when in their judgment the best interests of the schools require such change, into one school district with the purpose of the election of the board of trustees and of the location of the school at some central place," subject to the referendum therein provided (sec. 92 Id.), the county board of education had the power to rearrange the school districts of Habersham County in the manner shown in the record in this case; and School District No. 3 was not created illegally, and is not void because created in such manner. Code of School·Laws (Ga. Laws 1919, pp. 288, 326); 1 Park's Code, §§' 1565(u), 1565(v), ·1565(w).

4. Some of the lines of this district are other than creeks, public roads, land lots, district lines, or county lines; and intervenors insist that for this reason the creation of School District No. 3 was illegal and void, thus rendering the election void. *Held*, that while the lines of school districts must " be clearly and positively defined by boundaries, such as creeks, public roads, land lots, district lines, or county lines," (Code of School Laws, sec. 117, Ga. Laws, 1919, p. 333), boundaries other than those mentioned, if clearly and positively defined, will not render districts void.

5. The trustees of this district and a building committee contracted for the erection of a schoolhouse therein prior to this bond election, to cost considerably more than the amount of these bonds. At the time of the

election the building was in process of construction, but not completed. It required two thousand dollars to finish the payment of the cost of its construction. Intervenors objected to the validation of these bonds, on the ground that the debt contracted for the erection of this building was in violation of the constitution of this State, art. 7, sec. 7, par. 1, 2, which prohibits the creation of a debt by a political division of the State which cannot be paid from funds on hand or by the levy of taxes during the current year. *Held*, that, even if such debt was created in violation of this constitutional provision, it was still legal and constitutional to issue the bonds of this district, after the issuance thereof was approved by the requisite number of qualified voters of said district at an election held for that purpose, for the purpose of completing and equipping said schoolhouse, the power to issue bonds to build a schoolhouse including the power to complete one and pay for it.

6. Intervenors objected to the validation of these bonds, on the ground that this district was so rearranged by the county board of education, at the instance of the trustees and the building committee thereof, as to cut out from this district a sufficient number of voters who were known to be against the issuance of these bonds, and to keep them from voting at said election, and thus secure an approval of this bond issue by the requisite number of voters at said election, which was a fraud upon them; for which reason said bonds should not be validated. *Held*, that this action of the county board of education, although influenced by such purpose, was not a fraud upon the intervenors, and did not render such election void. *Moore* v. *Denny*, 150 *Ga.* 741 (105 S. E. 306); *Stephens* v. *Ball Ground School Dist.*, 153 *Ga.* 690 (113 S. E. 85).

7. Intervenors objected to the validation of these bonds, because, in laying off Habersham County into school districts, territory embracing some nine hundred acres of land, with $16,000 worth of taxable property, thirty-six white school children within school age, and fifteen voters, was not embraced in any school district in the county. *Held*, without deciding whether the unintentional omission of such amount of territory from any school district, in laying off the county into school districts, would make void the action of the county board of education in laying off the county into school districts (*Graham* v. *Roberts*, 145 *Ga.* 758, 89 S. E. 1045; *Tolbert* v. *Teal*, 146 *Ga.* 644, 92 S. E. 46), that there was evidence authorizing the trial judge to find against this contention; and for this reason we cannot say that he erred in overruling this objection. *Maynard* v. *Griffin*, 147 *Ga.* 293 (93 S. E. 401).

8. The trustees of this district were not elected by the voters of this district, but seem to have been recommended for these offices by a mass meeting of fifteen or twenty citizens. Upon this recommendation the county board of education commissioned the persons so selected as trustees of this district; and they have acted as such ever since they got their commissions. The notice, calling the election to determine whether bonds should be issued for building and equipping a schoolhouse in this district, was signed by two of these trustees, and approved by the ordinary of the county and the county board of education. The intervenors objected to the validation of these bonds on the ground, that, as these trustees were not elected by the citizens of the district

278 . STEPHENS *v.* SCHOOL DISTRICT. (154

as required by law (Code of School Laws, sec. 120, Ga. Laws 1919, p. 335, Civil Code of 1910, § 1533)', their appointment, the calling of said election, and the election itself were null and void. *Held,* that such trustees were de facto trustees, and their action as such in calling this election cannot be collaterally attacked as void on account of the manner of their selection and appointment. *DeLoach* v. *Newton,* 134 *Ga.* 739 (68 S. E. 708, 20 Ann. Cas. 342); *Morris* v. *Smith,* 153 *Ga.* 438 (112 S. E. 468).

9. The other objections urged by intervenors to the validation of these bonds are without merit; and the trial judge did not err in overruling all of these objections, and in validating the bonds.

*Judgment affirmed. All the Justices concur.*

No. 2856. SEPTEMBER 27, 1922.

Validation of schoolhouse bonds. Before Judge Jones. Habersham superior court. August 18, 1921.

The solicitor-general of the Northeastern Circuit filed a petition for the validation of bonds amounting to $2,000, proposed to be issued by School District No. 3, Habersham County, for the purpose of building and equipping a schoolhouse in and for that district. The petition recited that School District No. 3 is a district in which a local tax is now and may hereafter be levied for school purposes; that on April 30, 1921, an election was held in that district on the school site and at the schoolhouse in that district, in accordance with the laws of the State regulating such elections, on the question of the issuance of bonds to the amount of $2,000; that the registration of the qualified voters of the district was furnished in conformity to law, and showed the number of registered voters in the district to be 51, and in the election 36 of said voters voted "for bonds," and 13 voted "against bonds;" that notice of the election was published in the Tri-County Advertiser, the newspaper in which the sheriff's advertisements were published in said county, for eight weeks next before said election, and notice of the election was legally posted in three public places in the school district for ten days next before said election, a copy of the notice being attached to the petition as an exhibit; that after the close of the polls on April 30, 1921, the returns of the election were legally made by the board of trustees of the school district and in the presence of all the managers, who brought up the returns of the election, opened up, canvassed, and consolidated the votes according to law, when said returns showed that 49 votes had been cast, 36 of which were "for bonds," and 13 were "against bonds," making it appear that more than two-

thirds of the qualified voters voting in said election had voted for bonds, and that the number so actually voting were also a majority of the qualified voters registered in and for said election and for the district, and the result of said election was then and there declared to be in favor of the issuance of said bonds; that the consolidation and declaration of the result of the election was approved by the county board of education and the ordinary of the county; that the solicitor-general of the Northeastern Judicial Circuit within twenty days after the result of said election was declared, was notified in writing that the election had been held, and of the result thereof, a copy of said notice with exhibits being attached to the petition; that the amount of bonds to be issued by the school district is $2,000, to be in denominations of $200 each, to be issued for the purpose of building and equipping a schoolhouse in and for that district, and to bear interest at the rate of six per cent. per annum from date of issue, interest payable annually on January 1 of each year, the first bond to be paid on January 1, 1922, and one each January 1 thereafter until the last one is paid on January 1, 1931, said bonds to be numbered one and consecutively up to and including ten, all to be paid off in full, principal and interest, on or before January 1, 1931, said election being prima facie in favor of the issuance of said bonds; that the indebtedness created by the issuance of said bonds, when added to all other indebtedness of the school district, shall not exceed the constitutional limit of seven per cent. of the assessed valuation of the taxable property in said district; and that all the requirements of the law, respecting the ordering and holding of the election, the declaring of the result thereof, service of notice thereof on the solicitor-general, and the issuance of the bonds by said district, have been complied with. The petition prayed that the judge pass an order requiring the school district, by its proper officers, to show cause, at a time and place to be fixed within twenty days from the filing of the petition, why said bonds should not be validated.

The school district by its trustees answered, admitting all the allegations of the petition. The answer further averred that more than one fourth of the registered and qualified voters of the school district filed with its board of trustees a petition asking that an election be had to determine the question of whether or not bonds

were to be issued by said district for the purpose of building and equipping a schoolhouse therein; that the board of trustees passed an order, which was approved by the ordinary and the board of education of said county, fixing the amounts, denominations, dates when due, rate of interest, etc., of said bonds, and the time and place of holding the election, a copy of said order being attached to the petition as an exhibit; and that the school district desired to issue bonds as set forth in said petition.

Sam Stephens, Marion Martin, and V. C. Philyaw, residents and taxpayers of the district, intervened and demurred to the petition for validation, on the grounds: (1) that no legal or valid ground for validation of the bonds, or cause of action, is set forth; (2) that no list of voters was attached to or set out in the petition; (3) that it is not alleged that, in determining the question whether or not two thirds of the qualified voters of the district voted in favor of bonds, the tally-sheets in the last general election held in said district were resorted to as a correct enumeration of the qualified voters thereof as required by law; (4) that no list of voters or tally-sheets was attached to said petition; (5) that the allegations of paragraphs 7, 8 and 9 are conclusions of the pleader and should be stricken; (6) that it is not alleged in paragraph 8 what the value of the taxable property in the district was at the date of calling the election, or what the indebtedness was at that time; (7) that it is not alleged who gave the notice required by section 440 of Park's Code; (8) that the notice of the election was not given by the proper officer; (9) that the ballots cast in the election were void, in that the law requires that they should have written or printed thereon the words, " For Schoolhouse," or " Against Schoolhouse," whereas it is alleged in the petition that the words printed thereon were " For Bonds," and " Against Bonds," and whereas the notice of the election required the voters to have written or printed on their ballots the words " For Schoolhouse bonds," or " Against Schoolhouse bonds," for which reason the election was void; (10) that it is not alleged in paragraph 5 that two thirds of the voters of the school district voted for bonds. The demurrer was overruled, and error was assigned.

The intervenors filed an answer in which they denied all the substantial allegations of the petition and urged various objec-

tions to the validation of the bonds. The nature of so many of these objections as are material will appear from the syllabus by the court, supra.

On the hearing the allegations of the petition were supported by the evidence introduced, including the answer of the school district admitting them.

The intervenors introduced evidence tending to show that the County of Habersham was laid out in school districts in 1911; that in 1919 the board of education rearranged the districts by changing their lines, and by consolidating the Mud Creek District, a portion of Garrison District, and a portion of two or more other districts into School District No. 3; that the trustees of School District No. 3 were not elected by the citizens thereof as provided by law, but were chosen at a mass meeting of fifteen or twenty citizens, and on such recommendation were commissioned by the county board of education; that after School District No. 3 was created the county board of education made changes in the boundaries of this district, cutting from it territory embracing about nine hundred acres of land, $16,000 worth of taxable property, fifteen qualified voters, and thirty-six white children of school age; that some of the boundaries of School District No. 3 were conditional land lines or boundaries between adjoining owners of land; that the changes of the lines of this district were made without notice to them; that the trustees and the building committee of this district had, before making provision for the election, contracted for the building of a schoolhouse therein, which had not been completed but was in the process of construction at the time of the election; and that the proceeds of the bonds proposed to be issued were to be used in paying the balance due on the cost of the construction of this schoolhouse. The evidence was conflicting on the question as to whether any of the territory of the county was left out of the districts created by the rearrangement thereof by the board of education in 1919.

*J. C. Edwards & Sons,* for plaintiffs in error.

*J. G. Collins, solicitor-general,* and *I. H. Sutton,* contra.