*John E. Frankum, McMillan & Erwin,* for plaintiff.

*J. C. & H. E. Edwards,* for defendant.

---

16840. EDWARDS *et al.* v. CITY OF CLARKESVILLE *et al.*

1. The petition for validation of bonds was not subject to general demurrer for the want of necessary allegations, nor subject to any of the grounds of special demurrer attacking certain allegations as mere conclusions of the pleader.

2. The election did not appear to be void merely because the ordinance calling it provided that it should be held under the "Australian ballot system, now in force in" the county in which the municipality desiring to issue the bonds is located.

3. That the notice to the voters provided that the ballots should have written or printed thereon the words "For school bonds" or "Against school bonds," and that such ballots may have been used, did not invalidate the election, notwithstanding the ordinance calling the election prescribed that the ballots should bear the words "For public school bonds for schoolhouse." or "Against public school bonds for schoolhouse." The court did not err in overruling the demurrers.

4. The court did not err in admitting in evidence the list of registered voters over objection that it did not appear to have been purged or to have been approved by the mayor and council. This ruling will dispose of a similar objection to the admission of the registration book.

5. The election was not invalid because it did not appear that the mayor and council had published the names of the election managers in accordance with a certain provision of the city charter.

6. The evidence did not show that the proposed bonds would increase the city's debt to an amount beyond the constitutional limit.

---

Evidence, 22 C. J. p. 137, n. 75; p. 139, n. 27, 28.

Municipal Corporations, 28 Cyc. p. 1542, n. 51; p. 1585, n. 27 New; p. 1590, n. 69 New, 74; p. 1591, n. 86; p. 1593, n. 6.

Pleading, 31 Cyc. p. 51, n. 71; p. 280, n. 5; p. 281, n. 6 New; p. 291, n. 70.

Schools and School Districts, 35 Cyc. p. 993, n. 1 New.

7. It was not necessary that the municipality should make provision for the payment of the bonds prior to their validation. The judgment of validation was not erroneous for any reason urged.

DECIDED APRIL 20, 1926.

Validation of municipal bonds; from Habersham superior court —Judge J. B. Jones. June 13, 1925.

*J. C. Edwards, H. E. Edwards, T. D. Phillips,* for plaintiffs in error.

*Robert McMillan, solicitor-general, G. S. McMillan,* contra.

. BELL, J.　Robert McMillan, solicitor-general, filed a petition to the superior .court of Habersham county against the City of Clarkesville, for the validation of bonds. The allegations of the petition were substantially as follows:

1. The City of Clarkesville is a municipal corporation situated in Habersham county and in the Northeastern judicial circuit. ·

2. On May 16, 1925, an election was held in said city, "in terms of the law," on the question of whether the city ·should issue bonds in the sum of $8,000 for the purpose of raising money with which to build and equip a school building.

3. Notice of said election "was given and published as required . by law."

4. The registration list of the qualified voters of said city was "furnished in conformity with the law," and showed the number of qualified registered voters to be 192, 150 of whom voted, 122 in favor of bonds and 28 against bonds.

5. After the close of the polls and on May 19, 1925, the election managers, together with the mayor and council, canvassed the returns and declared the result of the election, and it appearing that more than two thirds of the qualified voters who voted in the election voted in favor of the bonds and that such two thirds was more than a majority of all the registered voters, the election was declared, "in terms of the law," to be in favor of the issuance of the bonds, "all of which was according to the statutes in such cases made and provided."

6. Within six months after the declaration of the result of the election, the solicitor-general of the Northeastern circuit was, "in terms of the law," notified in writing of the holding of such election and of the result thereof.

7. This paragraph showed the amount of annual interest to be paid, and also when the bonds should mature and be retired.

8. Taxes shall be levied and collected annually to provide a sufficient sinking fund and also to pay the annually accruing interest, etc.

9. "Said election so held as stated was prima facie in favor of the issuance of said bonds."

10. The indebtedness to be created by the issuance of the bonds, "when added to all other indebtedness of said city, will not exceed the constitutional limit of seven per cent. of the assessed valuation of the taxable property of said city."

11. All "the requirements of the law respecting the calling, ordering, and holding of said election, of declaring the result thereof, the service of the notice thereof on the solicitor-general, in all respects with the law of said State, have been fully complied with."

The petition made the prayers usual in such cases.

There was attached to the petition a copy of the notice to the solicitor-general, with exhibits attached to the notice, consisting of copies respectively of the ordinance authorizing the election, of the notice to the voters required by law to be published previously to the election, and of the order or judgment of the managers and the mayor and council declaring the result. The ordinance provided that those voting in favor of bonds should have printed or written on the ballots the words "For public school bonds for schoolhouse," and that those voting against bonds should use ballots in the same form, except having "against" instead of "for." The notice to the voters stated that the ballots should have printed or written thereon respectively the words "For school bonds" and "Against school bonds." The ordinance further provided that "said election will be held under the Australian ballot system now in force in Habersham county, Georgia."

At the time appointed for the hearing the city filed its answer under oath, admitting all the allegations of the petition; and J. C. Edwards, H. E. Edwards, and T. D. Phillips, alleging themselves to be citizens and taxpayers of the City of Clarkesville, appeared and objected to the validation, by a demurrer to the petition and also by a plea or answer. The demurrer was both general and special, and the grounds thereof were as follows: No sufficient facts are alleged to authorize a judgment of validation. The allegations of paragraphs 2, 3, 4, 5, 9, 10, and 11, and especially

the expressions, "in terms of the law," "published as required by law," "in conformity with law," "and all of which was according to the statutes in such cases made and provided," and the like, are mere conclusions of the pleader, without any facts or sufficient facts being shown to support them. There is no such election system as the "Australian ballot system" now of force in Habersham county, Georgia, for elections to be held in Habersham county or in the City of Clarkesville, and the election as ordered was therefore illegal. The interveners' plea or answer denied the several allegations of the petition and further alleged: There is no such election system in force in the City of Clarkesville as the Australian ballot system, and the election was therefore illegal and void. The managers were not present all the time during the hours of the election "as required by the rules of the act referred to." The ballots cast had printed or written thereon the words "For school bonds" or "Against school bonds," whereas the ordinance required the words "For public school bonds for schoolhouse" or "Against public school bonds for schoolhouse," and for this reason the ballots as cast were illegal and void, and the result and the declaration of the result were consequently void. The court overruled all grounds of the demurrer, and, after hearing evidence, entered a judgment of validation, and the interveners excepted. Other facts will be stated in the opinion below, the first three divisions of which will have reference to the demurrers, and the remainder of which will deal with assignments of error on the admission of evidence and on the final judgment in view of the evidence.

1. The law applicable to cases of this character provides that within a certain time after the solicitor-general has been served with the notice of the election and the result thereof, as prescribed by section 445 of the Civil Code (1910), he shall prepare and file in the proper court a petition in the name of the State and against the municipality or political division desiring to issue the bonds, "setting forth the service of the notice . . , the name of the county, municipality, or division seeking to issue said bonds, the amount of bonds to be issued, for what purpose to be issued, what interest they are to bear, how much principal and interest to be paid annually, when to be paid in full, and the further fact that an election was held for the issuance of said bonds, and that said

election is prima facie in favor of the issuance of the bonds." See Civil Code (1910), § 446. It is necessary, of course, to state the facts, and this should be done with sufficient particularity to meet the requirements of good pleading. A petition which fails to show, except by a bare conclusion, that the election resulted prima facie in favor of the issuance of the bonds is fatally defective and subject to general demurrer. *Smith* v. *Dublin,* 113 *Ga.* 833 (2) (39 S. E. 327). But legal results arising from the facts alleged may be pleaded in the form of a conclusion, and a petition which complies with this rule will not be subject to a general demurrer if a cause of action is otherwise stated. Nor is a conclusion in a pleading subject to *special* demurrer where the inference therein stated is legitimately deducible from the particular facts shown. *Western & Atlantic Railroad* v. *Reed,* 33 *Ga. App.* 396 (2), 404 (126 S. E. 393), and cases cited.

In the case before us the petition sufficiently gave the facts as to all matters concerning which allegations *were required,* and was not subject to general demurrer for the *want* of sufficient allegations; and since the conclusions which were made with respect to *these matters* were authorized by the facts pleaded, they did not expose the petition to special demurrer. The petition might have been subject to demurrer because of certain other conclusions, if these had related to matters which the law required the petition to cover. For instance, paragraph 3 alleged that "notice of said election was given and published as required by law," and, while a copy of the notice to the voters appeared as an exhibit, there was nothing to show when, where, or for what period this notice was published. Paragraph 4 alleged that "the registration list of the qualified voters . . was *furnished* in conformity with law" (italics ours), and paragraph 9 averred that the indebtedness to be created, when added to all other indebtedness of the city, would not exceed the constitutional limit. No facts were alleged in support of these conclusions. But where the petition of the solicitor-general sets forth with sufficient certainty the facts called for by section 446, it is not necessary to add more, and all the allegations of paragraphs 3, 4, and 9, to which we have just alluded, were purely voluntary. The law does not require an allegation as to publication of the notice to the voters, or as to the *furnishing* of the list of the registered voters (it being sufficient merely to show

the number of such voters), or as to the city's indebtedness not exceeding the limit allowed by the constitution. If there were unsupported conclusions of the pleader in reference to these matters, the interveners could not complain. The burden would be on them to plead and prove any facts which might show that the bonds should not be validated but as to which the statute does not require allegations to be made by the solicitor-general. If the petition filed by this officer contained allegations that were unnecessary to his case, the interveners had no right to any further specification than he chose to give them. The petition, having given information not required, was not bad for failure to supply it more in detail. *Western & Atlantic Railroad* v. *Reed,* 33 *Ga. App.* 396 (2), 400 (126 S. E. 404).

Of course, if a petition, instead of merely omitting to state facts in support of a conclusion unnecessary but not unfavorable to the plaintiff's case, should affirmatively disclose a defense, it would be fatally defective; but such could not be the effect of any of.the allegations so far considered. We shall endeavor to show presently that the same is also true of certain other averments of which it is sought to take advantage by the demurrer. What we hold here is that the petition was not subject to general demurrer for the want of necessary allegations, nor subject to any of the grounds of special demurrer attacking several of the allegations as mere conclusions of the pleader. *Spencer* v. *Clarkesville,* 129 *Ga.* 627 (2, 3) (59 S. E. 274); *Harrell* v. *Whigham,* 141 *Ga.* 322 (2, 3) (80 S. E. 1010); *Sewell* v. *Tallapoosa,* 145 *Ga.* 19 (9) (88 S. E. 577); *Stephens* v. *School District,* 154 *Ga.* 275 (1, 2) (114 S. E. 197); *Powell* v. *School District,* 26 *Ga. App.* 135 (105 S. E. 616).

2. The petition did not show that the election was illegal and void because it appeared from the copy of the ordinance that it should be held under the Australian ballot system "now in force in Habersham County." The charter of the city contains certain provisions as to how elections shall be held and empowers the mayor and council "to pass such rules and regulations governing all elections held in said city, as may be necessary, when not in conflict with this act." See Ga. L. 1917, p. 581, § 12. If the system of elections referred to in the ordinance is that provided for in the act of 1922 (see Ga. L. 1922, p. 97), it does not appear

that a rule or regulation providing for its adoption in the city would be in conflict with the city's charter, and this is true whether the system has been adopted in the county and whether adoption alone by the county could affect the city or not.  But even in the absence of all provisions therefor, to say merely that the election was to be held or was held under some system indefinitely described as the "Australian ballot system" would not affirmatively disclose that the election was void.  Section 126 of the Civil Code (1910) provides that "No election shall be defeated for non-compliance with the requirements of the law, if held at the proper time and place by persons qualified to hold them, if it is not shown that, by that non-compliance, the result is different from what it would have been had there been a proper compliance."  See also *Coleman* v. *Board of Education,* 131 *Ga.* 643 (9) (63 S. E. 41); *Brumby* v. *Marietta,* 132 *Ga.* 408 (1) (64 S. E. 321).

3.  That the ordinance provided for the use of ballots having printed or written thereon the words "For public school bonds for schoolhouse" or "Against public school bonds for schoolhouse," and that the subsequent notice to the voters prescribed ballots bearing the words "For school bonds" or "Against school bonds," would not render the election illegal even though it should be presumed that the ballots as actually used and voted were in the form prescribed in the notice, and were, therefore, to an extent not in accordance with the provisions of the ordinance. "An election will not be declared void because of a slight departure from the phraseology which the statute prescribes shall be written or printed on the ballots, when it is clear, from the ballots cast, that the voters' intention with respect to the question submitted is fully indicated. *DuPre* v. *Cotton,* 134 *Ga.* 316 (67 S. E. 876)." *Stephens* v. *School District,* 154 *Ga.* 275 (1) (114 S. E. 197). The notice to the voters disclosed, in accordance with the ordinance, the true purpose for which it was proposed the bonds should be issued.  The court did not err in overruling the demurrers.

4.  Complaint is made that the court "erred in allowing in evidence the registration list of voters furnished the managers for said election over the objection of interveners on the ground that said list showed on its face that it had not been properly purged by the mayor and council nor approved by the mayor and council as required by the charter of said city." The city charter requires that

the mayor and council shall provide for the registration of voters, and makes the city clerk the registrar. It is his duty to keep open at certain times the registration books of the city, and it is "the further duty of the city clerk to furnish a registration list in alphabetical order of all names, properly registered, and deliver the same immediately after the registration book closes to the mayor and council, who have authority by this act to properly purge said registration list and investigate, and if in their opinion any one or more voters registered on said list is not entitled to vote in such election it will be their duty to strike said name or names from said list. That after the said list has been thoroughly purged by the mayor and council it shall be their duty to approve said list and turn over said registration book and list to the election managers. The original book shall be kept at the polls by said managers of the election for the inspection of the voters and citizens of said city, but that said election managers shall be governed as to who shall be entitled to vote in said election by the alphabetical list duly approved and turned over to them by the mayor and council of said city." See Ga. L. 1917, p. 581, § 11. Counsel for plaintiffs in error do not insist in their brief that it appeared from the face of the registration list that it had been purged improperly, but the contention is that it appeared not to have been purged at all. Therefore, under the construction placed upon it by its authors, the assignment of error may be dealt with as if the word "properly" had been omitted. In the absence of anything to the contrary, the persons whose names were enrolled upon the registration book and copied therefrom by the city clerk on the registration list were prima facie entitled to vote. It was the duty of the mayor and council to purge the list only when purging was necessary. If there were names which ought to have been stricken, the burden was upon the interveners to show the fact. *Brown* v. *Atlanta,* 152 *Ga.* 283 (3) (109 S. E. 666). The presumption is that the mayor and council did their duty, and that they found upon the list no names of persons not entitled to vote.

The charter does require that the mayor and council shall approve the list, but it does not say that the approval shall be in any particular form, or even that it shall be in writing. Compare *York* v. *Lowry,* 34 *Ga. App.* 389 (3) (129 S. E. 793). Referring again to the interpretation of the assignment of error as made by coun-

sel, it is not contended that the list showed affirmatively that the mayor and council had not approved it, but the insistence is that there was no evidence of such approval. In other words, the contention is not that the approval was negatived, but is simply that it was not shown. The fact that the list was delivered by the mayor and council to the election managers is within itself sufficient evidence of their approval of it, in the absence of anything to show their disapproval. Compare *English* v. *Poole,* 31 *Ga. App.* 582 (4) (121 S. E. 589).

Furthermore, the presumption being that those who were registered were entitled to vote, the mere *absence* of the mayor and council's approval of the list would not rebut such presumption nor render the list inadmissible for the purpose of showing the number of registered voters in the city. See Civil Code (1910), § 126; *Coleman* v. *Board of Education,* 131 *Ga.* 643 (9) (63 S. E. 41); *Brumby* v. *Marietta,* 132 *Ga.* 408 (2) (64 S. E. 34); *Gracen* v. *Mayor of Savannah,* 142 *Ga.* 141 (9) (82 S. E. 453).

What is said above will dispose of a similar objection to the admission in evidence of the registration book.

5. Section 9 of the charter of Clarkesville provides that the authorities, "whenever any election is to be held, shall post at the courthouse and publish in a newspaper published in said city a notice that any election will be held, giving the date of said election and the names of the managers thereof thirty days before the date of said election." This provision, certainly as to giving the names of the managers, is merely directory; and even if it were otherwise, the judgment of validation would not be illegal merely because the proof submitted by the solicitor-general or the municipality failed to show that the names of the managers had been published in accordance with this section of the charter. It is not necessary that such information should be given in the notice to the voters as prescribed by section 440, nor that the petition of the solicitor-general should make any allegation in reference to such matter. If the failure to publish the names of the managers could be material, the burden would be on the interveners to prove it, and this they could not do merely by calling attention to an omission in the notice given to the voters under section 440.

6. A liability of a municipality for a legitimate current expense, where there is at the time of incurring the liability a suffi-

cient·sum in the treasury which may be lawfully used to pay the same, or where a sum sufficient to discharge the liability can be raised by taxation during the current year, is not a debt within the meaning.of the constitutional provision against the creation of debts by municipalities and other political divisions without due assent of the voters. *Butts Co.* v. *Jackson Banking Co.,* 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244); *Monk* v. *City of Moultrie,* 145 *Ga.* 843 (1) (90 S. E. 71); *City of Waycross* v. *Tomberlin,* 146 *Ga.* 504 (5) (91 S. E. 560); *Mayor of Washington* v. *Faver,* 155 *Ga.* 680 (6) (117 S. E. 653). The plaintiffs in error contend that the evidence shows that the bonds, if issued, would increase the city debts to an amount $1,229.40 in excess of seven per cent. of the assessed valuation of the taxable property; but it appears that more than $1800 of the amount included in the calculation represents liabilities for proper current expenses for the payment of which funds could be lawfully raised during the year in which such liabilities were incurred, and that when such sum is deducted, as it should be, the proposed bonds will not increase the city's debt beyond the constitutional limit.

7. The judgment of validation was not illegal because it did not appear in the ordinance calling the election, or otherwise, that provision had been made for the payment of the indebtedness sought to be incurred. "It is not necessary under the constitution that provision for the payment of such indebtedness shall be made until 'at or before' the liability is created, and such provision need not be made before the application for validation. *Epping* v. *City of Columbus,* 117 *Ga.* 263 (12) (43 S. E. 803)." *Davis* v. *Orland Consolidated School District,* 152 *Ga.* 76 (7) (108 S. E. 466). The judgment is not erroneous for any reason urged.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*