THACKER *v.* MORRIS, ordinary, *et al.*

**168**

No. 14516.    JUNE 11, 1943.

*Spence & Spence*, for plaintiff.

*J. H. McCalla* and *Bryan, Carter & Ansley*, for defendants.

REID, Chief Justice.    Norman H. Thacker filed a petition naming as defendants, in both their individual and official capacities, Luther Morris, W. L. McCart, and W. H. Brisendine, ordinary, sheriff, and commissioner of roads and revenues, respectively, of Rockdale County.    He described himself as a resident and taxpayer of that county, and alleged that subsequently to an election held on April 23, 1938, in accordance with the provisions of sections 3 and 4 of the "revenue act to legalize and control alcoholic beverages and liquor," approved February 3, 1938 (Ga. L. Ex. Sess. 1937-38, p. 103), which was in favor of taxing and legalizing and controlling alcoholic beverages and liquor, upon application defendant Brisen-

dine as commissioner aforesaid issued to him a license as a "retail distributor" of "alcoholic beverages and liquor," and that he had since operated under said license, which by its terms was effective until January 1, 1943. Petitioner applied for a renewal and extension of his license, but Brisendine as commissioner refused the application, assigning as a reason for such refusal that he was without authority to issue such license, because at an election held in said county on November 24, 1942, the former election of April 23, 1938, legalizing the sale of alcoholic beverages and liquor in Rockdale County, had been nullified. On November 5, 1942, there was filed with defendant Morris, as ordinary, a petition containing a list of more than thirty-five per cent. of the registered, qualified voters in Rockdale County, requesting the ordinary to call an election to determine whether the election held on April 23, 1938, legalizing the sale of alcoholic beverages and liquor, should be nullified. In pursuance thereof, on November 10, 1942, the ordinary issued a proclamation setting November 24, 1942, as the date upon which the election should be held, such proclamation being advertised November 13 and November 20. After detailing the contents of the petition so filed, and reciting compliance with the "provisions of the act of the General Assembly of Georgia 1938, approved February 3, 1938, and the amendment thereto approved March 27, 1941," the proclamation contained the further statement that "Those voting in said election wishing to vote for the nullification of said previous election held on 23rd day of April, 1938, as aforesaid, shall have written or printed on their ballots, 'For Nullification;' those wishing to vote against the nullification of said previous election shall have written or printed on their ballots, 'Against Nullification.'" The official ballots as submitted to the voters had printed thereon the following: "For Nullification of the previous election held on April 23, 1938." "Against Nullification of the previous election held on April 23, 1938." At the election held on November 24, 1942, more than a majority of the persons voting voted "For Nullification" of the election held on April 23, 1938, and the result of the election was filed as provided by law, and each of the defendants has stated to petitioner his purpose to regard said election as lawful, and that his application for renewal of his license would be refused.

Attack is made upon this election as illegal and void for many

reasons, and because of the length of the petition in this respect we prefer to set out here the basis of the attack substantially in the language of counsel for petitioner as condensed in his brief filed in this court, as follows: (a) That the last special election was not fairly presented to the voters as provided by the original act approved February 3, 1938; because, instead of submitting to the voters for determination the question of "For taxing and legalizing and controlling alcoholic beverages and liquor," as provided in said act, there was submitted a different question, to wit: "Those voting in the said election, and wishing to vote for the nullification of said previous election on the 23rd day of April, 1938, as aforesaid, shall have written or printed on their ballots, 'For Nullification;' and those wishing to vote against nullification of said previous election shall have written or printed on their ballots, 'Against Nullification.'" (b) Because the method provided by the call for the ballots to be printed, and the form in which the ballots were printed, was confusing, misleading, and unfair, in that the ballots were printed in large, black-faced type, the words "FOR NULLIFICATION," and the words, "AGAINST NULLIFICATION," in such a manner as would mislead and confuse the voters to vote in the opposite way from that which a reasonable person might intend. (c) Because the act of the legislature approved March 27, 1941, amending the previous act of February 3, 1938, is illegal and unconstitutional and violates article 1, section 3, of the constitution of Georgia, for that it is an ex post facto and retroactive law, in that by the terms of the act approved August 17 [March 27], 1941, it only provides for the nullification of the previous election under which plaintiff was licensed as a retail liquor dealer; but the last special election held on November 24, 1942, did not provide for the repeal of said previous election, but only that the said previous election should be nullified. (d) Because that by the terms of said election, and the law under which it was held, all of the acts of petitioner previously performed in the sale of liquor, which were lawful at the time of their doing, would by the terms of this law and this election become illegal; and all of said acts would under the existing statute law of Georgia constitute crimes. (e) That because of the retrospective provision of said law, all of the profits and gains which had come to petitioner from the operation of his said liquor business might be confiscated and escheated to the State

as illegal and unlawful profits arising from the operation of an unlawful business, although at the time of the acts they were entirely lawful. (f) Because the election was not called or held under the authority of said amendment, as provided by its terms that it should be held; for that the same was not advertised in the public gazette of said county for the full term of two weeks or fourteen days, the notice having been advertised November 13 and November 20, and the election was held on November 24, and was not in accordance with the provisions of the act. (g) Because it was provided in said amending act of 1941 that the ordinary should submit the question to the voters as was provided by the act of February 3, 1938, but the ordinary submitted a different question, to wit: "Should the election of April 23, 1938, be nullified?"

The prayers were, for injunction to prevent the defendants from interfering with continued exercise of the license granted to the plaintiff, and to restrain them from their recognition of said election as a lawful interference with the privileges and rights vested in him; that the court declare the election of November 24, 1942, null and void for the reason set out; that defendant Brisendine be required to exercise the discretion vested in him by law in determining whether petitioner is a fit person to be entitled to a renewal of his said license; and for general relief. A general demurrer by defendants was sustained, and the action was dismissed. On this judgment error is assigned.

■ The license held by the plaintiff as a retail distributor of alcoholic beverages and liquor was issued to him by the commissioner of roads and revenues under authority of an act of the General Assembly hereinafter referred to. By virtue of this license the plaintiff enjoyed a mere privilege of engaging in the business of retailing alcoholic beverages and liquor for a specified time, subject to the will of the authority granting it. It neither created a contractual right, nor vested in him any property right. *Sprayberry* v. *Atlanta,* 87 *Ga.* 120 (2) 125 (13 S. E. 197); *McKown* v. *Atlanta,* 184 *Ga.* 221 (190 S. E. 571) and cit. The act of the General Assembly approved March 27, 1941 (Ga. L. 1941, p. 199), was an amendment of an act approved February 3, 1938 (Ga. L. Ex. Sess. 1937-38, pp. 103, 124), known as the "revenue tax act to legalize and control alcoholic beverages and liquors." The 1941 act provides: "That in any county which has at any time held an election

in accordance with the provisions of this act, resulting in the majority of the votes being cast in favor of taxing, legalizing, and controlling alcoholic beverages and liquors, and the manufacture, distribution, and sale of same in such county, the ordinary of such county shall, upon a petition signed by at least thirty-five per cent. (35%) of the registered qualified voters of said county, proceed to call another election in the same manner as hereinbefore provided in this section, for the purpose of nullifying the previous election; however, no such election shall be called or had within two years after the date of the declaration of the result by the ordinary of the previous election had for such purpose under this act." This act is alleged to be unconstitutional because it is violative of art. 1, sec. 3, par. 2 (Code, § 2-302), of the constitution to wit: "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grant of special privileges or immunities, shall be passed." The alleged unconstitutionality of the act is based solely upon the proposition that the act only provided for a nullification of the previous election and did not provide for a repeal thereof, and that a nullification of the act of 1938 would be in effect to declare it void ab initio, thereby making it retrospective in character. The act of 1938, known as the "revenue tax act to legalize and control alcoholic beverages and liquors," created a method whereby any county through the means of an election might control the manufacture, sale, and distribution of alcoholic beverages and liquors when a majority of those voting at such election voted in favor of such control. However, no method, by election or otherwise, was provided by which any county once voting favorably for such control could repeal the action of the electorate. Evidently because of this omission the legislature, by this amending act now challenged, undertook to establish a method by which the people of a county might undo in the same manner that which they had theretofore done. The question is, did the legislature intend by this amending act to create a means whereby such an election might be voided in the sense of rendering it void ab initio, or was it the intention to provide a means for simply repealing the privileges granted by such an election? We have no hesitancy in holding to the view that the intention was to provide a means through election to repeal the action of the voters who had once voted for control. While in the construction of statutes "The

ordinary signification shall be applied to all words, except words of art, or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such trade, or with reference to such subject-matter" (Code, § 102-102, par. 1), yet, "In all interpretations, the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy. Grammatical errors shall not vitiate, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands" (par. 9). And "The intention of the legislature is the cardinal guide to construction of statutes; and when plainly collected, should be carried into effect, though contrary to the literal sense of terms." *Erwin* v. *Moore*, 15 *Ga.* 361. See *Barrett* v. *Pulliam*, 77 *Ga.* 552 (2); *Walsh* v. *Augusta*, 67 *Ga.* 293; *Board of Tax-Assessors of Decatur County* v. *Catledge*, 173 *Ga.* 656 (160 S. E. 909); *Gazan* v. *Heery*, 183 *Ga.* 30 (187 S. E. 371). This court, in *Columbus Railway Co.* v. *Wright*, 89 *Ga.* 574, 586 (15 S. E. 293), in dealing with the construction of a statute, said: "The law is too wise, too just, and too important to be defeated by sticking in the bark and adhering to the literal meaning of words, when by so doing we would not only set at naught the legislative will, but impute to our lawmakers the folly of making a provision at once mathematically absurd and legally impracticable." Upon the strength of these authorities, and many more which we do not think necessary to cite, we decide that the legislature intended only to give those counties which had voted favorably for control the same means of abolishing or repealing the control of manufacture, sale, and distribution of alcoholic beverages and liquors. The statute was not subject to the attack made. In view of this holding, it is unnecessary to make any ruling in respect to the questions raised in paragraphs above identified as (d) and (e).

Further complaint is made as to the form in which the ballots were presented to the voters at the special election at which repeal was favorably voted. The grounds of complaint are fully set out above in paragraphs (a), (b) and (g) of the statement of facts, all of which will be considered together. The act of 1938 provides for a form of ballot to be used in what might be referred to as county "local option" elections, as follows: Those voting in said election for the act to be put in force shall have printed or

written on their ballots the words, "For taxing and legalizing and controlling alcoholic beverages and liquors," and those voting against said act being put into effect in said county shall have printed or written on their ballots the words, "Against taxing and legalizing and controlling alcoholic beverages and liquors." This provision was not exclusive, and it did not forbid the use of other language substantially to the same effect. The amending act of 1941 provided no form of ballot to be submitted, but did provide that the "ordinary of such county shall, upon petition signed by at least thirty-five per cent. (35%) of the registered qualified voters of said county, proceed to call another election in the same manner as hereinbefore provided in this section [referring to the manner of holding elections as provided in the act of 1938], for the purpose of nullifying the previous election." It can hardly be questioned that the legislature intended that the election for repeal should be held in the same manner and form as the election for control. And while it might have been better to follow the statute in the submission of the question to the voters, it is not considered that the form in which it was submitted was so confusing as to mislead the voters or to cause them to cast their votes contrary to their intention. In *DuPre* v. *Cotton,* 134 *Ga.* 316, 319 (67 S. E. 876), the court said: "If the legislature prescribes a specific form of ballot and declares that no ballots except those in the prescribed form shall be counted, such enactment would be mandatory in character, and no ballot nullified by the legislature could be counted. Where, however, the General Assembly provides a referendum vote as a condition precedent to the levy of a local tax, and simply prescribes a form of ballot to be voted therein, the ballot will not be rejected because of a slight departure from the phraseology of the form, if it be clear from the ballot that the voter's intention with respect to the question submitted is clearly indicated. . . The ballot formulated is to be construed like any other writing, according to its plain meaning. A construction of the ballot which would deprive the voter of his vote will not be adopted where his ballot is equally susceptible of another construction which would give effect to his vote. The voter should not be disfranchised because of a slight departure from the phraseology of the legislative form, where the ballot expressed clearly his intent with respect to his position upon the question submitted at the election. The courts have uni-

formly applied these principles in appropriate cases." See *Morris v. Smith,* 153 *Ga.* 438 (2) (112 S. E. 468); *Stephens* v. *School District No. 3,* 154 *Ga.* 275 (1c) (114 S. E. 197); *Rhodes* v. *Jernigan,* 155 *Ga.* 523 (117 S. E. 432); *Edwards* v. *Clarkesville,* 35 *Ga. App.* 306 (133 S. E. 45). The election was not void for this reason.

Lastly, it is contended that the election was void, because the required notice of the call was not advertised in the public gazette of said county for the full term of two weeks, or fourteen days, as provided by the act. The act prescribes that, after the petition has been filed with the ordinary, "he shall call a special election to be held within thirty days from the filing of this petition and shall publish the notice of the call of the election in the official gazette of the county once a week for two weeks preceding the election." The proclamation was advertised on November 13 and November 20, and the election was held on November 24. November 13 and November 20 fell on Friday of consecutive weeks, and November 24, the election date, followed on Tuesday of the third consecutive week. This court will take judicial cognizance of the computation of time and the coincidence of days of the week with days of the month. *Werner* v. *State,* 51 *Ga.* 426, 427; *Dorough* v. *Equitable Mortgage Co.,* 118 *Ga.* 178 (45 S. E. 22); *Williams* v. *Allison,* 10 *Ga. App.* 840 (74 S. E. 442); *Farm Products Co.* v. *Eubanks,* 29 *Ga. App.* 604, 607 (116 S. E. 327). The statute under consideration requires publication of the notice once a week for two weeks preceding the election. No requirement is made as to the lapse of any particular number of days between the date of the first publication and the date of the election, or that the notice shall be published on any particular day of the week. Therefore publication on any day of each of two weeks preceding the election is sufficient. In these circumstances, the requirement of the act in this respect was fully complied with. The judge did not err in sustaining the demurrer and in dismissing the action, for any reason assigned.

*Judgment affirmed. All the Justices concur.*